FISHER A. BAKER and Others, as Trustees of the Trusts Created by the Will of FERRIS S. THOMPSON, Deceased, Respondents, *v.* LOUISE GRASSET THOMPSON, Appellant, Impleaded with TRUSTEES OF PRINCETON UNIVERSITY and Others, Respondents.

First Department, February 1, 1918.

Trust — application and limitation of rule that corpus of trust is to be maintained unimpaired — apportionment of proceeds of sale of right of trustees holding stock to purchase increased capital stock between principal and income — consent by beneficiary to the borrowing of money by trustees — election.

The rule in *Matter of Osborne* (209 N. Y. 450), that the principal of a trust invested in corporate stock is to be maintained unimpaired and the remainder awarded to the life beneficiaries, is intended to be applied in a case where the surplus of the corporation or some part thereof is distributed by dividends in cash or stock, or where in liquidation of the corporation's business its assets are sold and the proceeds distributed among the stockholders, or where the corporation purchases the stock from the trustees, thereby in effect causing a partial liquidation of the assets.

Said rule should be limited to those cases in which there is such a distribution of surplus.

The reason for the rule is that the surplus of the corporation represents accumulated income.

New shares of stock purchased by trustees in the exercise of subscription rights given to the stockholders and the proceeds of the sale of such subscription rights are capital of the trust estate to which the life beneficiary is not entitled. There is no distribution of surplus in such a case.

Hence, where a corporation increases its capital stock and gives its stockholders of record the right to subscribe for the new stock at par ratably

in proportion to their holdings, but such rights are not accompanied by any cash or stock dividend, trustees holding stock of said corporation in trust, who did not exercise the right to subscribe for the increased stock but sold said rights, properly credited the sum realized to the principal of the trust.

A beneficiary, who objected to a sale of sufficient stock held in trust for the purpose of paying a legacy and expenses of administration and consented to the trustees borrowing the sum required, is not entitled to object to the account of the trustees upon the ground that her income has been thereby diminished to the advantage of the principal, she having made an election which she cannot withdraw.

DOWLING, J., dissented.

APPEAL by the defendant, Louise Grasset Thompson, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 4th day of May, 1917, as resettled by an order made on the 8th day of May, 1917.

The judgment was rendered upon the report of a referee and the appeal is from the whole thereof, except in so far as it approves the account of the trustees, dated October 7, 1916, as to the trusts for Jane De Witt, Anna L. Roe, Katie Sullivan, Mamie Knipe and Mary Crafton, and except for the clauses of said judgment numbered " Seventh," " Ninth " and " Tenth."

*George S. Coleman* of counsel [*E. Crosby Kindleberger* with him on the brief], for the appellant.

*George L. Shearer* of counsel [*Morgan J. O'Brien* with him on the brief; *Stewart & Shearer*, attorneys], for the plaintiffs, respondents.

*Louis Dean Speir* of counsel [*Warren S. Bartlett* with him on the brief], for the respondent Princeton University.

*Tallmadge W. Foster*, for the respondent The New York Skin and Cancer Hospital.

PAGE, J.:

This action was brought for a judicial settlement of the accounts of the plaintiffs, as trustees of the trusts created by the will of Ferris S. Thompson, deceased. By virtue of the will of said Thompson the residuary estate was vested in the plaintiffs as trustees, so far as the questions raised in this

appeal, consisting of 3,500 shares of the stock of the Chase
National Bank to be held by them during the lifetime of his
wife, the income therefrom to be paid to his wife and other
beneficiaries therein mentioned.   On the death of his wife,
he bequeathed $200,000 to Mercy Hospital and Mercy Orphan
Asylum, and the remainder he bequeathed to Princeton
University.   By virtue of a trust agreement entered into in
his lifetime, and of a judgment of this court in relation thereto,
the said trustees became vested with 1,000 shares of the
Chase National Bank stock, income thereof during the life-
time of his wife to be paid as provided in the trust created by
his will, and on her death to be paid to Princeton University,
Seaman's Church Institute and the Skin and Cancer Hospital.
Thereafter the Chase National Bank increased its capital
stock from $5,000,000 to $10,000,000 and its stockholders of
record on September 7, 1916, were given the right to subscribe
for the new stock at par ratably in proportion to their hold-
ings, payment to be made on or before October 2, 1916.   Such
rights were not accompanied by any cash or stock dividend.
The book value of a share of stock of the Chase National
Bank at the date of Ferris S. Thompson's death was $299.70;
on the date of the establishment of the trust of the 1,000
shares by the trust agreement, $300.94; on the date of the
establishment of the trust of the residuary estate, $301;
on September 7, 1916, $319.06; on October 2, 1916, $317.60,
and on October 3, 1916, $208.80.   The book value of a right
to subscribe was $108.80 on each share of stock.   The trustees
did not exercise the right to subscribe for the stock of the
bank, but on September 12, 1916, sold said rights, realizing
$174 per share.   The sum thus realized, $609,000, on the
rights incident to 3,500 shares and $174,000 on the 1,000
shares, was credited by the trustees to the principal of the
respective trusts.   The appellant claims that the trustees
should have apportioned the proceeds, crediting to principal
sufficient to keep whole the value thereof which existed at
the time of their creation, and that the remainder should be
paid to the life beneficiaries as income.   On this basis it is
claimed that the proportion properly applicable to principal
would be $90.90 per share and $83.10 to income, making
$409,054.95 to principal and $373,945.05 to income.   Support

for this basis of apportionment is claimed in the rule laid down in *Matter of Osborne* (209 N. Y. 450, 484, 485) that the corpus of the trust is to be maintained unimpaired and the remainder awarded to the life beneficiaries. " The intrinsic value of the trust investment is to be ascertained by dividing the capital and the surplus of the corporation existing at the time of the creation of the trust by the number of shares of the corporation then outstanding, which gives the value of each share, and that amount must be multiplied by the number of shares held in the trust. The value of the investment represented by the original shares after the dividend has been made is ascertained by exactly the same method. The difference between the two shows the impairment of the corpus of the trust." This rule is intended to be applied in a case where the surplus of the corporation or some part thereof is distributed by dividends in cash or stock or where in liquidation of the company's business its assets are sold and the proceeds distributed among the stockholders, or as was held where the corporation purchases the stock from the trustees, thereby in effect causing a partial liquidation of the assets. (*Matter of Schaefer*, 178 App. Div. 117; affd. on opinion of SCOTT, J., 222 N. Y. 533.) The rule in the *Osborne* case, both in reason and authority, should be limited to those cases where there is such a distribution of surplus. Prior to that case it was the law in this State that extraordinary dividends declared out of accumulated profits, whether paid in cash or by the issue of stock, went to the life beneficiary. In so far as such surplus was accumulated prior to the creation of the trust, this caused a depletion of the value of the capital of the trust to the unjust enrichment of the life beneficiary. The rule was established to correct this inequitable result, and is a limitation and not an extension of the rights of the life beneficiary, as it theretofore existed.

The reason for this rule is that the surplus of the corporation represents accumulated income. That portion which was earned prior to the creation of the trust added to the capital stock represents its book value at that time. The income which was reserved by the company during the period of the trust, if at any time, or in any manner distributed to the stockholders equitably should go to those who were entitled

to the income derived from the stock investment during the trust period. If, therefore, the stock purchased in the exercise of the right given on the increase of the capital stock of the corporation can be treated as dividends, then the rule expressed in the *Osborne Case (supra)* should be applied. It has uniformly been held in this State that new shares of stock purchased by trustees in the exercise of subscription rights given to the stockholders, and the proceeds of the sale of such subscription rights are capital of the trust estate to which the life beneficiary is not entitled. (*Matter of Kernochan,* 104 N. Y. 618; *Stewart* v. *Phelps,* 71 App. Div. 91; affd., on opinion below, 173 N. Y. 621; *Robertson* v. *de Brulatour,* 188 id. 301; *Richmond* v. *Richmond,* 123 App. Div. 117; affd., on opinion below, 196 N. Y. 535.) There is no distribution of surplus in such a case. The income which has been reserved is still intact and subject to distribution as dividends. If the trustees exercise the option and purchase the stock the amount received in dividends on such distribution will be the same, although the rate is diminished in the same proportion as the capital of the company has been increased. If the trustees sell the rights the proceeds become a part of the capital and the life beneficiary will receive the interest or income derived therefrom on its investment. The right to subscribe is an incident to the ownership of the stock. Any value that attaches thereto properly goes to the enhancement of value of the stock which, not being the product of income, nor taken from income, is not to be distributed to those entitled to income. The capital of the trust is enhanced in value, and the income is increased by the result of the larger sum invested. The trustees have, therefore, properly credited the cash received from the sale of these rights to the principal of the trust estates.

The other objections raised by the appellant to the account of the trustees relate to a transaction whereby, to pay a legacy and expenses of administration, money was borrowed upon a pledge of the stock, instead of a sale of sufficient stock to pay. But as she at the time objected to the sale of the stock, and consented to the trustees borrowing the amount she cannot now object. She claims that her income has been thereby diminished to the advantage of the principal. Had

the stock been sold, the income would have been diminished. She insisted that the stock should be retained and the money borrowed, and thereby made an election which she cannot now withdraw.

The judgment should be affirmed, with costs.

CLARKE, P. J., and LAUGHLIN, J., concurred; DOWLING, J., dissented.

Judgment affirmed, with costs.