ADAM NAUSS, Respondent, *v.* NAUSS BROTHERS COMPANY and
Others, Defendants, Impleaded with FLORENCE T. HILDE-
BRAND, as Executrix, etc., of WENDOLIN J. NAUSS, Deceased,
Appellant, and CHARLES E. NAUSS, as Executor, etc., of
WENDOLIN J. NAUSS, Deceased, Respondent. (Motion
No. 1.)

First Department, March 4, 1921.

Corporations — action in equity by stockholder against corporation
and executrix of stockholder to compel distribution of dividends
and for other equitable relief — question presented on motion
by executrix for judgment on pleadings — when equity will not
direct declaration and distribution of dividends — collusive action
against corporation not shown — equity will not interfere to
maintain status quo pending examination of books — executrix
not necessary or proper party.

In a suit in equity by a stockholder of a corporation against the corporation
and the executrix of a stockholder for a decree requiring the corporation
to declare and distribute dividends, enjoining its directors from further
acting and for their removal, and for an accounting and the appointment
of a receiver of the property *pendente lite*, in which the said executrix
appeals from an order denying her motion for judgment on the pleadings,
the question presented for decision is not merely whether a cause of
action for any relief against her as executrix is stated but whether the
complaint sufficiently shows a cause of action for any of the equitable
relief demanded and whether she in her representative capacity is a
necessary or proper party to the determination of the issues upon which
plaintiff's right thereto depends.

Whether dividends shall be declared out of the surplus earnings of a cor-
poration, or whether the surplus shall be used to increase the business
or retained for the security and stability of the business, is a matter
which rests in the sound discretion of the directors, and unless it appears
that they recognize the propriety of appropriating the surplus earnings
to the payment of dividends, and the majority acting in bad faith toward
the stockholders have refrained from so doing, the court will not intervene
for the purpose of requiring the declaration and distribution of dividends.

The complaint herein does not show that the directors of the defendant
corporation recognized the propriety of declaring dividends, nor does it
show a duty on the part of the directors to do so, and a mere general
charge of bad faith is not sufficient.

The allegations in the complaint as to the proceedings by the said executrix
to recover against the corporation on certain promissory notes given
by it to her testator, to the effect that said action thereon was collu-
sively brought and the cause of action assigned to other stockholders for

the purpose of forcing the corporation out of existence, are not sufficient to entitle the plaintiff to any relief, for the allegations that the said action was collusively brought cannot avail inasmuch as the notes on which it was brought are not impeached, though the plaintiff might have done so if that were the fact, since at the time they were given he was treasurer of the corporation and signed the notes as such, and moreover, so far as the appellant is concerned, she had assigned all interest in said cause of action and no relief is demanded or needed against her with respect thereto.

A suit in equity cannot be maintained on the theory that it is necessary to maintain the *status quo* pending a mandamus proceeding instituted by the plaintiff for the inspection of the books of the company.

On all the allegations in the complaint the appellant was neither a necessary nor proper party to the action and the complaint should have been dismissed as to her on her motion for judgment on the pleadings.

APPEAL by the defendant, Florence T. Hildebrand, as executrix, etc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 20th day of August, 1920, denying said defendant's motion for judgment on the pleadings dismissing the complaint.

*Joseph H. Kohan* of counsel [*Jerome Steiner* with him on the brief; *Petersen, Steiner & Kohan*, attorneys], for the appellant.

*John C. Judge*, for the plaintiff, respondent.

*Charles A. Winter*, for the respondent Charles E. Nauss, as executor.

LAUGHLIN, J.:

This is a suit in equity by a stockholder of the defendant Nauss Brothers Company for a decree requiring the company to declare and distribute dividends from its surplus assets, enjoining its directors and officers from further acting and for their removal, for an accounting of all the acts and doings of the company from its incorporation and directing that the surplus shown on such accounting be distributed among the stockholders, and for the appointment of a receiver of the property of the company *pendente lite* with authority to carry on its business.

The complaint having been framed for equitable relief, the point presented for decision on appellant's motion was not

First Department, March, 1921.          [Vol. 195.

merely whether a cause of action for any relief against her
as executrix is stated but whether the complaint sufficiently
shows a cause of action for any of the equitable relief demanded
and whether she in her representative capacity is a necessary
or a proper party to the determination of the issues upon
which plaintiff's right thereto depends. (*Travis* v. *Knox
Terpezone Co.*, 165 App. Div. 156; affd., 215 N. Y. 259;
*Trotter* v. *Lisman*, 209 id. 174.)   The complaint shows that
the company was incorporated in 1894 under the laws of New
York with a capital stock of 1,000 shares of the par value of
$100 each, for the purpose of buying, selling and trading in
meats and domestic supplies incidental thereto; that its
principal place of business was in the county of New York;
that since 1894 plaintiff has been the owner of record of 88
shares of the capital stock; that Wendolin J. Nauss was the
president and a director of the company down to the year
1907, when he made his son, Charles E. Nauss, president, but
that, although not president, he remained in control of the
corporation until his death in 1918; that the appellant became
his executrix and his said son executor of his estate and they
qualified and entered upon the discharge of their duties as
such and are still so acting; that the plaintiff was the treasurer
of the company, which had been doing a large and profitable
business, but paid no dividends for twenty-one years prior
to the death of Nauss, excepting possibly in the year 1910,
although dividends could have been paid continuously each
year if the decedent had so desired; that after the death
of Nauss his executors " collusively " began an action in the
Supreme Court, New York county, against the company on
various notes which they claimed were outstanding, valid,
legal obligations against it and conducted the action to a
point where a judgment might have been taken against the
company for upwards of $56,000, but that the judgment has
not been entered; that " as part of said arrangement " (no
arrangement, however, having been thereinbefore referred to)
the prospective judgment was purchased by the defendants
Henry J. Hildebrand and Frederick Nauss " for the sole
purpose of taking control " of the company " and doing with
it what they saw fit, and at all times threatening and menacing
the said corporation with the fact that if this plaintiff or any

other stockholder of the said corporation demanded his rights that said judgment would be put into execution and the corporation wiped out;" that "in the collusive arrangements that were made to take a judgment" against the company, the attorneys for the plaintiffs in that action sent this plaintiff, who was then the treasurer of the company, to a firm of attorneys designated by them, who had never represented the company and were unknown to him, saying: "These are the attorneys who will take charge of this friendly suit and will only charge $250 for it." The complaint does not show that the plaintiff employed said firm of attorneys to represent the company or to what extent the proceedings in that action progressed, excepting as may be inferred from the allegation that judgment may be entered therein against the company; and although the plaintiff was treasurer of the company and in a position to know the facts with respect to the notes, he neither alleges that they were or were not valid obligations of the company. He next alleges, evidently referring to the action on the notes, that the "proceedings were fictitious, collusive and not good in law" and that the existence "of the alleged obligations" against the company renders its financial status to be that of insolvency, while in truth and in fact it is a prosperous going concern and the plaintiff and the other stockholders should be receiving their profits by way of dividends and not be deprived of their rights "by the above and other acts illegal and unwarranted" by the true facts and circumstances; that if it can be proved "by the present holders thereof that the said alleged judgment is a good, valid and legal obligation" against the company, it should be paid or a settlement should be made and it should not be held as a menace "to continuously defeat the rights of this plaintiff and the other stockholders;" that if the company is unable to pay the judgment, then it is insolvent and has committed an act of bankruptcy and a receiver should be appointed, and if the judgment is not a good, valid and existing claim against the company, the officers and directors should have it set aside and declared null and void; that said Henry J. Hildebrand controls about 476 shares of the capital stock and he and the defendant Frederick Nauss, who

is the president of the company, manage and control the
corporation and that the defendants who are sued in their
individual capacities are the other directors, and are hired
clerks or journeymen butchers, employed in the business;
that in 1907 when plaintiff was treasurer of the company, it
was made clear at a meeting of the board of directors that the
company was financially well able to pay a dividend and the
matter was brought up at a meeting of the stockholders but
that the decedent prevented the declaration of a dividend;
that the business was continually increased to such an extent
that one branch of it was enlarged from a single to a double
store by the purchase by the decedent of an adjoining house
and improving the same at a total cost of more than $45,000;
that during the past ten years repeated demands were made
on the decedent and on the company by stockholders, including
plaintiff, for an inspection of the books of the company, but
the demands were refused and the plaintiff was obliged to
apply for a writ of mandamus and the proceeding is still
pending, and the plaintiff fears that unless the holders of the
judgment are enjoined they will make use of the judgment
before the mandamus proceeding for an inspection of the
books by the plaintiff shall be terminated; that the plaintiff,
in addition to being a stockholder and treasurer of the com-
pany, was employed by it on a " weekly stipend," until after the
death of the decedent as a journeyman butcher and a buyer,
and that it was definitely understood by an agreement with
the decedent that he was to share in the profits of the business
by dividends or interest on his stock, but that instead of this,
decedent took most of the earnings for improvements, and
when he died left an estate of upwards of $1,800,000, " most
of which money was accumulated by him directly and indirectly
from the defendant company, in which he was but an officer
and stockholder, the same as this plaintiff; " that after the
death of Nauss, defendants Frederick Nauss and Henry J.
Hildebrand, owing to the fact that the plaintiff was demanding
his rights in the company and refused to give them a voting
proxy on his stock, ousted him from the company and dis-
charged him from its employ and that his certificates of stock,
which were in the possession of the executors of the decedent,
were retained from him with a view to depriving him of the

right to inspect the books, and he was obliged to bring a replevin action therefor; that the plaintiff fears that his rights and interest in the company are being jeopardized and that the holders of the judgment will make use thereof " for the purpose of forcing the defendant company out of existence " and, therefore, an injunction restraining them from so doing is necessary to protect the rights and interests of the plaintiff, and if insolvency exists a receiver should be appointed; that the plaintiff is informed and believes that " it would be readily easy " for the company at the present time to pay a dividend of twelve and one-half per cent upon its net earnings and that the profits of the company " are being unlawfully used by the said defendants Henry J. Hildebrand  *  *  *  and by Frederick Nauss;" that the judgment has been deliberately obtained " for the sole purpose of having a menacing control " over the company and its stockholders, and it continues to stand as a liability of the company, although the company is financially well able to pay it, and the purpose of so letting it stand is to cause the company and its stockholders to be powerless against the threats and doings of the defendants Henry J. Hildebrand and Frederick Nauss; that owing to the fact that the entire control of the company is in the hands of Nauss and Hildebrand, plaintiff cannot and is not allowed to have any voice or say in its management, and the officers and directors have a further plan and scheme fully to control the company so that they may become possessed of it in their individual right at a much less price than its actual value, and for this reason no dividends are paid and the money and profits of the company are being stored up and reserved for the individual benefit of its officers and directors and are not now distributed to the stockholders for the reason that the officers and directors intend " to get the whole company for themselves and when that time arrives, to have all of the profits and assets held in reserve for themselves;" that the defendants have not acted in good faith with the plaintiff as a stockholder but have acted unreasonably and in bad faith and are still so doing and have deprived and are still depriving plaintiff as a stockholder of a reasonable division of the surplus, well knowing that the company has surplus and profits which should be divided among the stockholders; that the defendants are not acting honestly toward

First Department, March, 1921.          [Vol. 195.

the stockholders in the performance of their duties as directors as required by law and act with malice aforethought toward them and such acts are now proving to be and will continue to be disastrous to the holdings of the plaintiff and other stockholders and that no demand has been made on the company to bring the suit for the reason that it would be ineffectual, since the defendants are its officers and directors in control of it.

It is well settled that whether dividends shall be declared out of surplus earnings of a corporation, or whether the surplus shall be used to increase the business or retained for the stability and security of the business, is a matter which rests in the sound discretion of the board of directors, and unless it appears that they recognize the propriety of appropriating the surplus earnings to the payment of dividends, and the majority acting in bad faith toward the stockholders have refrained from so doing, the court will not intervene for the purpose of requiring the declaration and distribution of dividends. (*Hiscock* v. *Lacy*, 9 Misc. Rep. 578, cited with approval in *Reynolds* v. *Bank of Mt. Vernon*, 6 App. Div. 62; affd., 158 N. Y. 740; *Williams* v. *W. U. Tel. Co.*, 93 id. 162; *McNab* v. *McNab & Harlin Mfg. Co.*, 62 Hun, 18. See, also, *Beveridge* v. *N. Y. E. R. R. Co.*, 112 N. Y. 1, 27; *Miller* v. *Crown Perfumery Co.*, 125 App. Div. 881.) It sufficiently appears that there is an unfriendly feeling and friction between the plaintiff and members of the board of directors who control the business of the company, and the complaint charges generally that the directors are acting in bad faith in refraining from declaring dividends, but it does not show that the directors recognize the propriety of declaring dividends, and I think it fails to show a duty on the part of the board of directors to declare dividends. It is to be inferred from some of the allegations of the complaint that the solvency of the company may depend on the validity of the proceedings in the action in which judgment may be entered on the notes, and that the plaintiff does not know whether it is solvent or insolvent. He complains that earnings were used during the lifetime of the decedent for the extension of the business which he thinks should have been distributed as dividends; but manifestly he shows no facts sufficient to impeach the

action of those whose duty it was to determine the question. He charges that the existence " of the alleged obligations " against the company, by which presumably is meant the notes and status of the action brought thereon, renders the financial status of the company to be that of insolvency; and then .he alleges not that it is solvent but that it is a prosperous going concern and he and the other stockholders should be receiving dividends. After this, however, he alleges that if the company has been unable to pay the so-called judgment, if valid, then it is insolvent and a receiver should be appointed. These allegations impliedly admit that the plaintiff does not know whether or not the company is solvent; but if it be solvent, the facts shown are not sufficient to warrant a decree requiring the board of directors to declare a dividend. The complaint should have set out the facts with respect to the assets and liabilities of the company, showing the surplus, if any, and why it is not needed in the business. A *prima facie* right to dividends should be shown by setting forth the facts with respect to the financial condition of the company and to rebut the presumption arising from the failure of the board to declare dividends that the directors have honestly exercised their discretion by showing a state of facts tending to show that they could not, acting in good faith, have deemed it necessary to refrain from declaring dividends. It is insinuated in the complaint that the decedent derived some or all of his fortune directly or indirectly from the business but no facts are alleged tending to show that he acquired money or other property from the company without consideration or otherwise improperly. It is not sufficient merely to charge bad faith.

The allegations of the complaint are insufficient to entitle plaintiff to any relief with respect to the proceedings in the action on the notes, and it will be seen that a temporary injunction with respect thereto is the most that is requested. It would seem that the plaintiff, having been treasurer of the company until after the death of Nauss, is in a position to know whether or not the notes on which the action was brought were valid. It may be observed in this connection . that it appears by the verified answer of Nauss as executor, which is in the record, that the decedent held twenty-two

notes of the company aggregating upwards of $104,000, and with the exception of one for $3,000 they were all signed by the plaintiff as treasurer of the company.  The allegations that the action was collusively brought are of no avail inasmuch as the notes on which it was brought are not impeached. It is not material why the action was brought since it must be assumed that the notes were valid.  Moreover, so far as the appellant and her coexecutor are concerned, according to the allegations of the complaint, they have parted with all interest in the cause of action on the notes, and no relief is demanded or needed against them with respect thereto.  The complaint teems with allegations of legal conclusions evidencing the opinion of the plaintiff in the premises, but it is quite barren with respect to allegations showing material and essential facts to warrant the intervention of a court of equity, which are misappropriation of funds, or losses through negligence of officers or directors, or fraud or bad faith or departure from charter powers.  (*McHenry* v. *Jewett*, 90 N. Y. 58; *Petty* v. *Emery*, 96 App. Div. 35; *Eppley* v. *Kennedy*, 131 id. 1; *O'Brien* v. *Fitzgerald*, 6 id. 509; affd., on opinion below, 150 N. Y. 572; *People* v. *Equitable Life Assurance Society*, 124 App. Div. 714; *Schwab* v. *Potter Co.*, 194 N. Y. 409.)  The allegations that if the so-called judgment is valid, it ought to be paid or a settlement ought to be made with respect thereto, and that if it is not valid, it should be vacated, involve what are apparently sound business principles; but they afford no basis for determining that the directors have failed to perform their duties.  It is not alleged that the directors have sufficient funds on hand with which to pay or settle for the claim referred to as a judgment.  If it appeared that the company was well able to pay without the impairment of necessary working capital, and that those in charge of it were holding the claim over the company and in a position to enter judgment thereon at any time, there would be some merit in the action, but it is not shown that the company had sufficient funds available which could be spared for that purpose or that the claim was invalid.  The only allegation with respect to the amount of the company's funds, other than the very general allegations, is the allegation on information and belief that the company at the present time could pay a dividend of over twelve and

one-half per cent on its net earnings but it is not otherwise shown that it had any net earnings. It is a reasonable inference that the allegation was made with respect to the financial condition of the company, not after but before the payment of the claim for $56,000. In so far as the allegations of the complaint tend to show that the action is brought to maintain the *status quo* pending the mandamus proceeding for the inspection of the books of the company, it needs no argument to show that a suit in equity cannot be maintained on such a theory. There is no allegation that the appellant's testator misappropriated any of the funds of the company or permitted their disbursement improperly; and no facts are alleged to sustain a right to an accounting against his personal representatives and such an accounting is not demanded unless possibly it may be said to be embraced in the general demand for an accounting of all the acts and doings of the company. We need not decide whether the allegations of the complaint sufficiently state a cause of action for equitable relief against any of the other defendants. We have only to decide whether the complaint tends to show a cause of action against any of them in equity to which the appellant is a necessary or a proper party. We have analyzed the complaint and commented thereon, not with a view to deciding whether any cause of action is stated, for that is not presented for decision, but only to point out that it states for the most part conclusions of law instead of facts and is most indefinite and why we think the appellant is not a necessary or a proper party. Charges are made against her testator for failing to pay dividends, but manifestly if dividends are to be declared, the right to have them declared depends upon the financial condition of the company now and not on its financial condition when the testator was in charge and the plaintiff acquiesced in his refusal to permit the declaration thereof, and in any event the decree of the court with respect thereto would run to the board of directors. The personal representatives of the testator are not directors; and on the allegations of the complaint they have no interest in the so-called judgment. I am of opinion that if a cause of action in equity is sufficiently stated, appellant is neither a necessary nor a proper party.

First Department, March, 1921.          [Vol. 195.

It follows that the order should be reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.

CLARKE, P. J., DOWLING, MERRELL and GREENBAUM, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.