In the Matter of the Accounting of the ROCHESTER TRUST and SAFE DEPOSIT COMPANY, as Executor of ARTHUR T. HAGEN, Deceased, Respondent.

PATRICIA C. WILLIAMS et al., Appellants; EMMA J. HAGEN, Respondent.

(Argued June 8, 1933; decided July 11, 1933.)

*Thomas H. Remington,* as special guardian, for appellants.

*Ernest C. Whitbeck* for Emma J. Hagen, respondent.

CRANE, J. The rule of *Matter of Osborne* (209 N. Y. 450) has again arisen in this case to perplex us. Arthur T. Hagen died January 13, 1917, leaving a last will and testament in which he bequeathed the residue of his property to a trustee to pay the income to his wife for life and the principal on her death to his three grandchildren. The trustee (now the Rochester Trust and Safe Deposit Company) set up the trust as of the date of the testator's death at which time 814 shares of the General Baking Company constituted part of the principal. Actually there was at first 700 shares, subsequently increased to 814, and other property, but as this case involves only the stock of the General Baking Company we will start with a trust estate of 814 shares of the preferred stock, which paid seven per cent, with a right of participation in any other dividends after payment of a like per cent on the common stock. The common and preferred were then to share alike. By a resolution of December 13, 1921, taking effect January 1, 1922, " there was a change made in the capital structure of the General Baking Company." This is the testimony of Albert A. Clarke, secretary and treasurer of the company. One share of the preferred stock was to be exchanged, " upon surrender of the certificates, properly endorsed," at the rate of one share of preferred stock of no nominal or par value and one share of common stock with no nominal or par value. The trustees made the exchange and then had in the trust 814 shares of preferred stock of no par value paying eight per cent, and 814 shares of common stock of no nominal value, in place and stead of the 814 shares of preferred par ($100) stock paying seven per cent with the participating rights as stated. The new preferred had no such participating rights. Mr. Clarke testified that this was a conversion of par value stock into

no par value stock; that the par value stock had participating rights which on January 1, 1922, were of value to the holder, and that because of this feature the no par common stock was given in exchange or, at least, this was part of the consideration.

Later, and in December of 1922, a stock dividend was declared on the common stock and the trustees received 1,628 additional shares of common stock which, under the rule of the *Osborne* case, is claimed by the life beneficiary. The surplus justifying this stock dividend it is conceded had been earned since January 13, 1917, the date of the testator's death, and the setting up of the trusts. On the other hand, the special guardian for the infant remaindermen claims that part of these shares should be allotted to the trust principal.

On December 31, 1921, just before the reorganization of the General Baking Company, a share of common stock was of the book value of $46.278, so that the 814 shares were worth $37,670.29. This is the figure at which the remaindermen say the trust principal must be maintained. After the reorganization of the company, the common stock was of less value, $22.0194 per share, but the value of the trustee's holdings had increased, for it now had the original 814 shares of common stock and the declared stock dividend of 1,628, making in all 2,442 shares which, at $22.0194 per share, equals $53,771.37 in value. If on January 1 the common stock held by the trustee had a book value of $37,670.29, and this figure is to be continued, all over that goes to the life beneficiary as representing earnings between January and December of 1922. The balance between $37,670.29 and $53,771.37 is $16,101.08, " which represents [so states the accountant, G. Arthur Jackson] the amount of earnings on the shares from the date of the receipt of new shares to the date of the declaration of the stock dividend." This all goes to the life beneficiary, but as we are dealing in shares of stock and not in dollars, we must divide this balance

by $22.0194, the value of a single share, and this gives us 731 shares to go to the life estate and 897 to the trust principal.

All this seems perfectly clear if we take January 1, 1922, as the date for valuing the trust instead of January 13, 1917, or, in other words, if we consider the exchange of stock as a material increase in capital investment and not in the nature of a stock dividend. The rule of the *Osborne* case was supposed to be simple and just; it proved to be confusing and at times unjust. (See the complexities arising in *United States Trust Co.* v. *Heye*, 224 N. Y. 242.) The Legislature gave us the much needed relief by enacting chapter 843 of the Laws of 1926, amending section 17-a of the Personal Property Law (Cons. Laws, ch. 41), whereby all stock dividends were declared to be principal, not income. As these provisions were not retroactive we must do the best we can with the apportionment rule, recognizing, however, that even under the *Osborne* case all increase in the value of the trust estate is not income. Cash dividends go to the life beneficiary — no question about that — stock dividends, and stock dividends only, go to the life beneficiary if they have been declared out of subsequent earnings; if not, they must be apportioned. Any natural increase in the value of the trust estate remains principal. Gain by increment in capital valuation goes to principal. (*Pratt* v. *Ladd*, 253 N. Y. 213.) Stock set up in the trust may have a market value far in excess of book value as taken for principal or by increase in the value of property. Should the trustees decide to sell such stock, turn the trust estate into cash, the life beneficiary would not be entitled to any part of this increased value, at least so long as the income was not lessened. (*Matter of Schley*, 202 App. Div. 169; 234 N. Y. 616.) We said in the *Heye* case, referring to the rule of the *Osborne* case: " This does not mean that the principal of the trust fund has to remain at the same value, and

that all increase belongs to the life beneficiaries. While the corpus of the fund may not be depleted, yet the corpus may accumulate or increase, and until there is some division in the nature of a dividend payable out of accumulated earnings or profits, there is nothing that can be awarded as income to beneficiaries" (p. 253). (See, also, *Bourne* v. *Bourne*, 240 N. Y. 172.)

Thus, the right to subscribe for new shares of stock given to stockholders and the profits from the sale of such subscription rights are capital of the trust to which the life tenant is not entitled. (*Baker* v. *Thompson*, 181 App. Div. 469; 224 N. Y. 592.)

There was no stock dividend declared until December, 1922. The reorganization or readjustment of the corporate stock structure which took place in January of that year was not a stock dividend, nor was it intended to be. The form of the transaction was no attempt to deceive or cover up a dividend. There was outstanding preferred stock of a nominal par value of $100, paying seven per cent and with the valuable right to share equally in further dividends after seven per cent had been paid on the common stock. What the value of this right was in 1917 we do not know. That it had a potential value is evident from subsequent developments. This right might have raised and very likely did raise the market value of the stock above its book value; in other words, after determining the capital and surplus as of 1917, there would be considered as a factor entering into the value, this right to future earnings. It does not appear that the trustee attempted to ascertain this value — probably no one could estimate it — as it depended upon the future prospects of the company. When, however, the capital structure of the company was changed, the value of this right was considered in seeking to induce stockholders to exchange their stock. The nature of the preferred was affected — non-par was given for $100 par value stock — eight per cent for seven and one share

of the new common for each of the preferred as a consideration for the relinquishment of the participating rights. This was not a dividend declaration, but a substitution of one class of stock for another; one was given up and others taken, just as if the trustees had sold the preferred and bought a larger number of the new issue — the increased value would go to principal, or amount to an increase in the value of the trust holdings. Any increase in the cash dividends would of course go to the life beneficiary. The rule to be applied to such a situation was correctly stated by the Surrogate in his revised decision, wherein he stated that "income" does not include ascertainable increase in the value of capital, nor profits on sale of corporate stock out of the corpus of the trust, nor value accruing to such stock by reason of subscription rights attaching to, or awarded it, or the proceeds of the sale of such rights.

The value, therefore, of these new shares of stock taken in exchange upon the reorganization of the company is to be fixed as of the date when received, January 1, 1922. The figures are given above and result in 897 shares of the stock dividend passing to the principal of the trust as determined by the Surrogate.

These shares have since been exchanged for stock in the General Baking Corporation, and part of these in turn have been sold, but this is immaterial to the issue before us, which is solely the ownership of the 200 per cent stock dividend of the General Baking Company, declared in December, 1922.

The order of the Appellate Division should be reversed and the decree of the Surrogate's Court affirmed, with costs in this court and in the Appellate Division to all parties payable out of the estate.

POUND, Ch. J., LEHMAN, KELLOGG and O'BRIEN, JJ., concur; CROUCH, J., dissents; HUBBS, J., not sitting.

Ordered accordingly.