In the Matter of the Accounting of SECURITY TRUST COMPANY OF ROCHESTER, as Trustee under the Will of HENRY A. STRONG, Deceased.

Surrogate's Court, Monroe County, March 17, 1950.

*Justin J. Doyle, Alfred W. Dunbar* and *George H. Hawks, Jr.,* for trustee, petitioner.

*Charles S. Wilcox* and *Thomas M. Nichols* for Hattie M. Strong and others, objectants.

*John G. Shaw* and *Donald R. Harter* for Alvah G. Strong and others, respondents.

*William F. Bleakley, William Dickinson Hart, Horace N. Taylor* and *Richard S. T. Marsh* for Gertrude S. Achilles and others, respondents.

*George Q. Slocum* for Henry Strong and others, respondents.

*Barry, Wainwright, Thacher & Symmers* for Frances M. Achilles, respondent.

*David H. Shearer,* special guardian for Michael B. Hubler and others, infants, respondents.

WITMER, S. This is a proceeding for the second judicial settlement of the account of the trustee, covering the period from October 31, 1930, to April 18, 1949. The only objection raised to the account herein is made by the life tenants and is directed to the failure of the trustee to apportion between the life tenants and the remaindermen the shares of common stock received by the trustee in an exchange of shares on a stock split-up made by Eastman Kodak Company in 1947. Just prior to the split-up the trust estate held 24,000 shares of no par value common stock of said company having a stated value of $50. The stock split involved the issuance of five shares of common stock having a par value of $10 per share for each of the former no par value shares, so that the trustee received 120,000 shares of such new stock. The objectants claim that

53,627 or more of said new shares, having a value of about two and a half million dollars should be apportioned to income and be paid to the primary life tenant now; and they rely principally upon *Matter of Osborne* (209 N. Y. 450); *United States Trust Co.* v. *Heye* (224 N. Y. 242), and *Soles* v. *Granger* (174 F. 2d 407). Respondents contend that no stock dividend resulted from the acts of the Eastman Kodak Company, that the cases relied upon by objectants do not apply here, and that there should be no apportionment of the stock.

The testator died on July 26, 1919. His will was admitted to probate in this court on September 17, 1919, and on that day letters testamentary were issued thereon to Walter S. Hubbell and Security Trust Company of Rochester. The testator made provision in his will for cash legacies and devises, and in paragraph " Eighth " thereof disposed of his residuary estate in part as follows:

" I direct my executors and the survivor of them to divide all the rest, residue and remainder of my property and estate, both real and personal, of every name and nature and whereso-ever situate, into four parts as nearly equal in value as prac-ticable:

\* \* \*

" I give, devise and bequeath the remaining one-fourth (¼) part of my residuary estate to the Security Trust Company of Rochester, of Rochester, New York, in trust, however, for the following uses and purposes:

" To invest the same and to keep the same invested and to pay the income, proceeds and profits thereof, semi-annually or quarterly, to my wife, Hattie M. Strong, so long as my said wife shall live."

The said Hattie M. Strong is still living, and as the primary life tenant is the principal objectant in this proceeding.

The record herein shows the history of the Kodak stock held by the trustee in the trust in question, and the history of the changes made by Eastman Kodak Company in its common stock and its transfers from surplus to capital account. The executors transferred from the testator's estate to the petitioner the old common stock of the par value of $100 each of Eastman Kodak Company in the following amounts on the dates indicated:

| | |
|---|---|
| On December 27, 1920, | 1,000 shares |
| On May 19, 1921, | 1,500 shares |
| On July 12, 1921, | 636 shares |
| Total — | 3,136. |

At the times of said transfers letters of trusteeship had not been issued to petitioner, but were subsequently issued to it on December 2, 1921, and it held said stock as trustee herein. In September, 1922, pursuant to a recapitalization of Eastman Kodak Company effective April 4, 1922, the trustee received ten shares of common stock, no par value, of Eastman Kodak Company in exchange for each of the 3,136 shares previously received by it, as shown above. Of the new stock thus received the trustee sold 4,360 shares in the spring of 1926, and 3,000 shares in 1941 and 1942, retaining 24,000 thereof in the trust until 1947 when they were exchanged for 120,000 new shares, as above noted.

On December 22, 1930, a decree was entered in this court judicially settling the account of the trustee for its acts as such for the period from December 28, 1920, to October 31, 1930. At no time since testator's death and prior to the decree of December 22, 1930, had any transfer of earned surplus to capital been made by the Eastman Kodak Company. No claim was made upon that judicial settlement proceeding by the objectants herein that an apportionment to income should have been made from the stock received upon the split-up of ten for one share made in 1922, and no claim is made therefor now. At any rate, the decree of December 22, 1930, by its approval of the trustee's allocation of such stock to principal is a conclusive adjudication of that matter.

In 1937 Eastman Kodak Company issued additional no par value common stock under rights granted to stockholders to purchase one share for each ten shares of stock held. The premium received upon this stock in excess of its stated value of $10 per share amounted to the sum of $28,782,600, and was credited to the paid-in surplus. At the end of that year the company increased the stated value of its common stock from $10 per share to $40 per share by transferring to capital from paid-in surplus the sum of $28,617,861.54, and from earned surplus the sum of $38,909,768.46.

In 1939 Eastman Kodak Company issued additional no par value common stock under rights granted to stockholders to purchase one share for each ten shares of stock held. The premium received upon this stock in excess of its stated value of $40 per share amounted to the sum of $19,273,502.50, and was credited to paid-in surplus. On November 20, 1945, the company increased the stated value of its common stock from $40 per share to $50 per share by transferring to capital from paid-in surplus the sum of $19,273,502, and from earned surplus the

sum of $5,486,628. Objectants do not claim that the transfers from paid-in surplus to capital give them any right to apportionment; and they admit that neither the transfer from earned surplus to capital made in 1937 nor the one made in 1945 gave them any right to have apportioned to them any part of the stock held by the trustee then or at any time prior to the split-up later made in 1947.

Effective May 15, 1947, Eastman Kodak Company readjusted its capital structure by changing its common stock from no par value, $50 stated value, per share to par value at $10 per share, and by increasing the authorized number of shares of common stock to 20,000,000, and issuing 5 shares of the new common stock for each share of the existing common stock. The resolution of the stockholders making this change provided in part as follows: " That the presently authorized Common Stock of the Company, consisting of Two million, five hundred thousand (2,500,000) shares without par value be changed into Twelve million, five hundred thousand (12,500,000) shares of Common Stock of the par value of Ten dollars ($10) per share;''

No transfers from surplus to capital were made at this time. In the letter of the company's president to the stockholders, dated April 1, 1947, announcing the proposed change, he stated in part:

" The split of the Common Stock, 5 for 1, will simply divide each share of the issued Common Stock into 5 shares having an aggregate book value exactly the same as the book value of the single share before such split. By making the stock available in smaller units, this split will reduce the market value of each unit, thus making it easier for more people both to buy and sell shares, and should also result in a wider distribution of the stock. This proposal accords with recent general recommendations of the New York Stock Exchange.

" The change from Common Stock without par value to $10 par is designed to reduce the taxes of your Company upon the increase in its Common shares and that of its stockholders upon transfers of such shares.

" The increase in the amount of the authorized Common Stock beyond the amount necessary for the foregoing split will give your Company a total of 7,558,790 Common shares which will be available for issue and sale if future capital needs make such financing desirable.''

As a result of such stock split the trustee returned to the company its certificates representing the 24,000 shares then held by it in this trust and received in exchange therefor certifi-

cates representing 120,000 shares of the new common stock. It is this stock which objectants contend must be apportioned, giving to the life tenant a portion thereof, as representing the earned surplus transferred to capital in 1937 and 1945.

On November 16, 1948, the board of directors of Eastman Kodak Company declared a stock dividend of one share of common stock for each twenty shares thereof outstanding, payable January 22, 1949. The company advised its stockholders at that time in part as follows:

"(a) The stock dividend is to be charged to Earned Surplus, including current earnings transferred or to be transferred to Earned Surplus. Current earnings for the fiscal year 1948 are expected to exceed the amount of cash dividends declared or paid by the Company in 1948 as well as the entire charge to Earned Surplus in respect of the stock dividend.

" (b) The stock dividend has not been characterized by the Company as either ordinary or extraordinary. *It is the first stock dividend in the Company's history.*" (Italics supplied.)

On January 22, 1949, such dividend stock was issued " full-paid and non-assessable ", and for each share issued $40 of earned surplus was transferred to capital in payment thereof. As a result of this stock dividend the trustee herein received 6,000 additional shares of said common stock. Upon consent of all parties hereto an order of this court has been made authorizing the trustee to deliver said 6,000 shares of stock to the life tenant, as representing income.

Not only do objectants admit that before the stock split of 1947 they were entitled to no apportionment of the existing stock despite the two transfers of earned surplus to capital, but they also admit that even after the split they would be entitled to no apportionment of the new stock exchanged for the old, except for the fact of such transfers of earned surplus to capital. They claim, however, that because of the transfers of earned surplus to capital, the subsequent split entitles them to have the new stock apportioned. In support of this position objectants cite particularly the words of the court in *United States Trust Co.* v. *Heye* (224 N. Y. 242, 254–255, *supra*): " The fundamental principle involved in these questions is whether there has been a *distribution* or *division* of the earnings, profits or accumulations of the corporation. Until there has been such division, the life tenant is not entitled to any increase in the value of the principal of the trust fund, or the capital and assets of the corporation, shares of which constitute the trust fund. But when there has been a division of the corporate property,

no matter what form it may take, that part thereof which consists of accumulated profits or earnings belongs to the life tenant and that which is capital to the remainderman. Each case necessarily is determined by its own facts.''

This, of course, poses the question whether a '' distribution or division of the earnings, profits or accumulations of the corporation '' was made in this case. Inherent in this question is the question whether the stock split of 1947 amounted to a stock dividend to any extent.

In *Equitable Trust Co.* v. *Prentice* (250 N. Y. 1) where it was held that a testamentary authorization to a trustee to allocate stock dividends to principal was not a provision for unlawful accumulation of income, the court, through CARDOZO, Ch. J., (pp. 8, 10) succinctly stated the problem in cases of this sort, as follows:

'' A surplus in the treasury of a corporation, even though not income for the shareholder, is potentially a fund that may be converted into income. The declaration of a stock dividend destroys this potential income, and turns the surplus into capital. The effect may be at times to thwart the plan of apportionment between life tenant and remainderman as conceived at the foundation. A founder of a trust has conveyed shares to a trustee to pay the income to wife or child for life with remainder upon death to others. Did he mean in thus apportioning his estate that potential income might be cut down through the vote of the corporate managers so that the beneficiary never could resort to it, and principal increased to the profit of remaindermen, perhaps unknown or unborn?  *  *  *

'' The act by which this is done is not an accumulation by the individual shareholder, who may have nothing to do with it. It is no more his act than a refusal by the directors to vote out surplus cash (*Matter of Kernochan,* 104 N. Y. 618). Still less is it an accumulation directed by the founder of the trust. The change is one fortuitously ensuing from the declaration of the will of others.''

In the instant case we have the additional fortuitous circumstance that the directors have never declared a stock dividend with respect to the surplus transferred to capital in 1937 and 1945. Did the stock split of 1947 amount to a stock dividend in any event? Objectants assume and assert that it did because of the transfers of earned surplus to capital in 1937 and 1945; but no case is cited which holds that a stock split as made in this instance amounts to a stock dividend.

The authorities which objectants cite are in point only if we find that the split did effect a stock dividend. If a stock dividend resulted, it is clear that the portion thereof attributable to earned surplus accumulated since the beginning of the trust must be allocated to income. That was the determination made in *Matter of Osborne* (209 N. Y. 450, *supra*). There it had been contended, in reliance upon *McLouth* v. *Hunt* (154 N. Y. 179), that all of the stock dividend should be allocated to income, and the court held (p. 477) that the part of the stock dividend which represented earned surplus accumulated since the creation of the trust must be apportioned to the life tenant, but that in the interest of remaindermen the corpus of the trust must be protected against dissipation by the payment to income of extraordinary stock dividends insofar as they amount to a depletion of the trust corpus. (See *Equitable Trust Co.* v. *Prentice*, 250 N. Y. 1, 9, *supra*, and *Baker* v. *Thompson*, 181 App. Div. 469, affd. without opinion 224 N. Y. 592.)

In *Baker* v. *Thompson* (*supra*, p. 472), the Appellate Division said that the *Osborne* case (*supra*) '' is intended to be applied in a case where the surplus of the corporation or some part thereof is distributed by dividends in cash or stock or where in liquidation of the company's business its assets are sold and the proceeds distributed among the stockholders, or as was held where the corporation purchases the stock from the trustees, thereby in effect causing a partial liquidation of the assets. (*Matter of Schaefer*, 178 App. Div. 117; affd. on opinion of SCOTT, J., 222 N. Y. 533.) The rule * * *, both in reason and authority, should be limited to those cases where there is such a distribution of surplus.'' In 1926 the New York Legislature clarified the law of this State by providing (Personal Property Law, § 17-a as amd. by L. 1926, ch. 843) that in the absence of contrary provision in the will or instrument creating the trust all stock dividends upon stock composing the principal of such trust should be principal and not income to the trust; but this law is not retroactive (*City Bank Farmers Trust Co.* v. *Wylie*, 273 N. Y. 304, 310; *Matter of Hagen*, 262 N. Y. 301, 305), and so does not help us in respect of this trust.

The testator's intention in respect of stock dividends or other shares of stock which the trustee may receive is controlling, where it can be ascertained. (*Matter of Lloyd*, 292 N. Y. 280, 285; *Equitable Trust Co.* v. *Prentice, supra,* p. 8; *Matter of Osborne, supra,* p. 458.) In the instant case the will of the testator does not reveal his intention in this respect, and so we must determine his '' presumable intention '' by resort

to general principles of construction. (See *Equitable Trust Co. v. Prentice, supra,* p. 9.)

In the *Osborne* case (*supra*) the court noted the difference between the Massachusetts rule and the Pennsylvania rule with reference to stock dividends, and substantially adopted the Pennsylvania rule. As above noted, in 1926 our Legislature enacted section 17-a, as amended, of the Personal Property Law, thus establishing the Massachusetts rule in New York as to trusts created thereafter. In 1935 the American Law Institute adopted the Pennsylvania rule in section 236 of its Restatement of the Law of Trusts. In 1948, however, the Institute reconsidered this question, found that the trend among the States, by decision and statute, is now to follow the Massachusetts rule, and that the latter is in general more satisfactory, and amended section 236 of the Restatement of the Law of Trusts to accord with the Massachusetts rule. (Restatement, 1948 Supp., Trusts, § 236; and see *Matter of Heinrich,* 195 Misc. 803, 811.) Moreover, ever since the decision in the *Osborne* case (*supra*) our courts have recognized the difficulties of application of the principle therein adopted, and have figuratively sighed with relief at the realization that trusts created since the statute of 1926 are not governed by said decision. (*People ex rel. Clark v. Gilchrist,* 243 N. Y. 173, 182; *Matter of Hagen,* 262 N. Y. 301, 305, *supra.*) From this review of the progress of the law with respect to stock dividends it is evident that the attitude of our Legislature, of our courts and of the American Law Institute neither calls for nor permits an extension of the principle of the *Osborne* case (*supra*).

The objectants rely particularly upon *Soles* v. *Granger,* (174 F. 2d 407, *supra*), asserting that it is so like the case at bar as to be virtually controlling. That case involved the question of taxes. It arose in Pennsylvania and the Pennsylvania rule (applicable before Pennsylvania adopted the Massachusetts rule by statute in 1947) was applied, as was done in the *Osborne* case (*supra*). In the *Soles* case (*supra*) the trust in question held stock in the Hookless Fastener Co. Inc. On August 5, 1937, the board of directors of the corporation transferred on its books a substantial amount of surplus to capital, increased the stated value of its common stock from $900 to $1,250 per share, and proposed to the stockholders of the corporation that they increase the authorized capital stock and split the existing shares. The stockholders voted approval of the plan and on October 5, 1937, two months after the original action by the directors, the corporation increased its authorized common

stock and issued 250 new shares thereof for each share previously outstanding. The court said at page 410:

" The customary procedure incident to the creation and distribution of a stock dividend is as follows: (1) The capital stock is increased; (2) the new stock is paid up (by the corporation) with the accumulated corporate profits; (3) the new shares of paid-up stock are then distributed among the stockholders pro rata as a *dividend*.

" In the instant case the Corporation followed the usual design in the stock dividend pattern when it capitalized $1,282,500 of its accumulated profits in the surplus account, increased authorized capital stock from 3,906 shares without par value to 1,000,000 shares $5.00 par value, and issued 250 shares of the new stock for each share of the old. In our opinion the proportionate part of the new stock attributable to the amount transferred from surplus to capital constituted a stock dividend."

Obviously, as the law stood prior to 1926 a transfer of earned surplus to capital *for the purpose of declaring a stock dividend,* and the declaration and issuance of such stock dividend to a trustee stockholder required the allocation of such stock to a life tenant of the trust, within the limits of the *Osborne* case *(supra).* In the case at bar the transfers of earned surplus were made in 1937 and 1945 without any thought of a stock dividend or of splitting the stock. As objectants admit, such transfers without more gave the life tenants no right to have the existing stock in the trust apportioned. (*People ex rel. Adams Elec. Light Co.* v. *Graves,* 272 N. Y. 77, 80; *United States Trust Co.* v. *Heye,* 224 N. Y. 242, 253, *supra; Robertson* v. *De Brulatour,* 188 N. Y. 301, 311; *Lowry* v. *Farmers' Loan & Trust Co.,* 172 N. Y. 137, 144–145; *Matter of Bonbright,* 186 Misc. 172, 176.) As objectants also admit, a mere split-up of capital stock without a transfer of earned surplus to capital would give a life tenant of a trust holding such stock no right to have the new stock apportioned (*United States Trust Co.* v. *Heye, supra,* p. 256; *Matter of Lissberger,* 189 Misc. 277, affd. 273 App. Div. 881, leave to appeal denied, 298 N. Y. 934; *Matter of Lissberger,* 188 Misc. 811; *Matter of James,* 140 Misc. 369, 371; *Matter of Norton,* 129 Misc. 875), nor would a corporate recapitalization and readjustment of stock issues not involving a transfer of earnings to capital. (*Matter of Hagen,* 262 N. Y. 301, 303–304, *supra.*) When, however, a transfer of earned surplus to capital is made at approximately the same time

that the corporate stock is split, a stock dividend results whether or not it is called a stock dividend. (*Soles* v. *Granger*, 174 F. 2d 407, *supra; Matter of Norton*, 129 Misc. 875, *supra.*) What ingredient transforms these two situations from negatives when occurring in different corporations to a positive when occurring in the same corporation? Is it the intention of the directors of the corporation as shown by their words or actions, including the factor of time, or the mere fact of the transfer and split? Respondents claim the former, and objectants the latter.

Insofar as the directors intend to create a stock dividend out of earned surplus the cases show that such intention will be recognized. If they attempt to create a stock dividend in fact, but seek to disguise it or fail to classify it, the court will determine from their acts what they really intended. (*Soles* v. *Granger, supra; Matter of Norton, supra,* and see *Matter of Hagen*, 262 N. Y. 301, 306, *supra.*) But if they act in good faith the court ordinarily will not question their decisions (*Bourne* v. *Bourne*, 240 N. Y. 172, 177; *Matter of Lissberger*, 189 Misc. 277, 279, affd. 273 App. Div. 881, leave to appeal denied, 298 N. Y. 934 *supra;* and see *Matter of Hagen, supra,* p. 306) nor undertake to make corporate decisions for them which they saw fit not to make themselves. (*Matter of Bonbright*, 186 Misc. 172, 177 *supra.*)

At this point it should be observed that Eastman Kodak Company has paid liberal cash dividends upon its common stock every year involved herein. No stockholder saw fit to question the acts of the directors of the company in 1937 or 1945 in transferring the earned surplus to capital and increasing the stated value of the stock instead of paying larger cash dividends or declaring a stock dividend. No question is raised in this case about the entire good faith of the directors of the company in their acts with which we are here concerned. There is no doubt that no stock dividend was contemplated when the transfers of earned surplus to capital were made. When in 1947 the company determined that it would be wise for it to split its stock, it did so for reasons then stated, including public relations, marketability of its stock and increasing the number of shareholders and hence persons interested in the company, and for stated tax purposes. No stock dividend was then intended. Immediately after the stock split each stockholder held exactly the same proportionate interest in the company as before. Since the objectants had no right to have the stock held in trust apportioned immediately before the

split, in this case it is difficult to comprehend why the principle of the *Osborne* case (*supra*) should be extended to give them such right in the new stock, each share of which merely represents a one-fifth interest in an original share surrendered.

In *Equitable Trust Co.* v. *Prentice* (250 N. Y. 1, 8–9, *supra*) the court noted that dividends are usually thought of as synonymous with earnings and income, but that stock dividends sometimes embrace corporate assets other than earnings or may be based in whole or in part upon earnings accumulated prior to the beginning of a trust in which a life tenant has an interest (i.e. *Matter of Osborne, supra.*) Essentially, however, a dividend constitutes a distribution of earnings, and a stock dividend is made by the issuance and delivery to stockholders of additional stock, supported by assets, usually earnings, transferred to capital. It amounts to a cash dividend and a simultaneous reinvestment thereof with the company by the stockholder, and the stockholder receives additional stock from the company as evidence thereof. A stock split, on the other hand, gives the stockholder no additional stock, but merely divides that which he previously held without altering the amount of the capital and surplus of the company. The latter is the situation in the case at bar.

Upon the question of whether the intention of the directors of the corporation has a bearing in the matter, it should be observed that they and they alone had the power, acting in good faith and within legal limits, to declare a dividend, in cash or stock or otherwise (*Williams* v. *Western Union Tel. Co.*, 93 N. Y. 162, 192; *Nauss* v. *Nauss Brothers Co., No. 1*, 195 App. Div. 318, 324; *Jones* v. *Van Heusen Charles Co.*, 230 App. Div. 694), and they did not need to consult the stockholders with reference thereto. On the other hand, a stock split could not be effected without the vote of the stockholders, which was here obtained. Moreover, it is conceivable that against the will of the board of directors, at an annual meeting of the stockholders a resolution to split the corporate stock might be presented and adopted, and the stock would thereupon be split although it was contrary to the will of the directors. This merely serves to emphasize the fundamental difference between a stock dividend and a stock split. It is only when the directors have by their acts in fact effected a stock dividend that a stock split will be declared to be a stock dividend. Such was the situation in the *Soles* case (*supra*).

Since, as the cases above cited show, the earnings of the corporation belong to it, and the stockholders have no right

thereto until the directors in fact make a distribution of them in some manner equivalent to a dividend, before apportionment can be ordered we must find wherein was the " distribution ". Although the language used in the *Osborne* case (*supra*) and the *United States Trust Co.* v. *Heye* case (*supra*) is broad enough to include this case if the principle of those decisions were to be extended, they were dealing with facts showing that stock dividends had been intended. *Baker* v. *Thompson* (181 App. Div. 469, affd. 224 N. Y. 592) quoted *supra,* shows that the principle of those decisions should be limited to similar situations, and we have previously shown that all reason is against an extension of such principle. Professor Scott (2 Scott on Trusts, § 236.3, p. 1302) has said of this principle: " One difficulty with the argument is that no court has been willing to follow it to its ultimate logical conclusion, and to treat the earnings of the corporation as for all purposes income to the shareholders. The rule is generally applied only when the earnings are distributed by the corporation among the shareholders in the form of a dividend."

The court cannot act for the directors, but may only interpret their acts and determine whether they in fact made a distribution of earnings. In this case they made transfers of earnings to capital and increased the stated value of the company's stock instead of declaring and paying a dividend by payment of cash or issuance of stock. These acts, fortuitous as they were, clearly gave no right of apportionment to the life tenants. The later stock split was made for legitimate corporation reasons, long after the transfers of 1937 and 1945, and was not intended as a stock dividend. No stock dividend was declared at the time of the stock split and no transfers of earnings to capital were then made. The directors intended and made no distribution or division of the earned surplus previously transferred to capital. The new shares, as a whole, merely replaced the old shares as a whole. It was merely an exchange as the company stated. In 1948 the directors showed that they knew how to declare a stock dividend when they expressly did so, and they then stated that it was the first stock dividend in the company's history.

The case is thus distinguishable from all others which have been brought to the court's attention. In this limbo of the law, where it appears improper to extend the principle of the *Osborne* case (*supra*), it appearing that the directors of Eastman Kodak Company acted in good faith, the court is not constrained nor inclined to hold that the objectants have a right

to apportionment of the stock received by petitioner herein upon said stock split, and accordingly holds that no such right to apportionment exists in this case.

Although counsel have argued and submitted extensive briefs concerning the method of apportionment and the amount of stock to be apportioned to income if any apportionment is to be made, no consideration thereof is given in this opinion because of the conclusion that there should be no apportionment.

Submit decree accordingly.