G. Robert Wither, S.
The testator made his will and died in 1920 leaving a substantial estate. Upon this judicial settlement of the account of the trustees of the trust created under paragraph £ £ Fourth ’ ’ of the will some questions have been raised for decision. In paragraph ££ Seventh ” of his will the testator provided in part as follows: £ 1 It is my desire * * * that any of my said sons may designate by Will his present or any future wife as beneficiary of not to exceed one-half of his said share of income during her lifetime, and I hereby authorize and direct my said executors and trustees to pay * * * to a widow of any of my sons, such designated share of income during said trust.”
R. Bruce Lindsay, one of testator’s sons, died in 1945 leaving a will which has been admitted to probate and in which it is provided: “First: I give to my beloved wife, Gladys, during her lifetime, one-half of my share of the income from the estate of my father, Alexander M. Lindsay, being the maximum portion which I am permitted to leave her by the provisions of his Will, and designate her as beneficiary thereof. In the event she shall remarry, then I give to her, during her lifetime, one-third of my share of the income from the said estate and direct that the balance of such income shall be paid as directed by the terms of my father’s Will.”
In 1949 Gladys Lindsay, widow of R. Bruce Lindsay, remarried, and since that date, pursuant to the appointment contained in Bruce’s will as above quoted, the trustees have been paying to her one third of the income of the trust fund formerly held for the use of Bruce. No one has raised objection herein to such payment. The trustees seek a construction of the testator’s will to determine whether Gladys is entitled as a matter of law *377 to one third of such income since her remarriage. I hold that she is entitled thereto, and the acts of the trustees in respect of such income are approved. The testator authorized his son to appoint up to one half of the income to the son’s wife. The only reasonable meaning of the provision is that he gave to his son the power to appoint up to one half of the income to the woman who should become his widow. The son made such appointment, but further provided that in the event of her remarriage she should receive only one third of the income. The gift to the son’s wife comes, of course, through the testator’s will. It might be said that the provision in such will wherein the testator authorized his trustees to pay the appointed income to the son’s “widow” limited the son’s power to appoint to his wife only so long as she should remain his widow. The use of the word ‘ ‘ widow ’ ’, however, does not indicate that the testator meant a particular status of his son’s wife as distinguished from the individual who should be his wife at his death. (See Matter of Dell’Aquila v. Chapman, 277 App. Div. 54, affd. 302 N. Y. 713.) There is, therefore, no clear language or intent shown in testator’s will to the effect that in the event that the son’s widow should remarry, her right to the appointed income should cease. A clear gift in a will may not be cut down by subsequent language which does not unequivocally show an intent to limit the extent of the gift (Banzer v. Banzer, 156 N. Y. 429, 435; Tillman v. Ogren, 227 N. Y. 495, 505; Matter of Forde, 286 N. Y. 125), and hence Gladys Lindsay Sullivan from the date of her remarriage was entitled to receive and is entitled to continue to receive such one third of the income appointed to her.
The trustees received from the executor some stocks, including that of Eastman Kodak Company; Sibley, Lindsay & Curr Company and Security Trust Company of Rochester. Certain questions have arisen by reason of corporate recapitalizations, stock dividends and stock splits in the named companies.
The facts concerning the stock of Eastman Kodak Company are substantially the same, so far as material, as in Matter of Strong (198 Misc. 7, affd. 277 App. Div. 1157). The determination in that case is controlling with respect to the stock of Eastman Kodak Company herein; and it is held that no apportionment is required as to such stock, and the stock received on the split in 1947 was properly allocated to principal.
In the case of the stock of Sibley, Lindsay & Curr Co., it appears that no income was transferred to capital in connection with the recapitalization, and hence no apportionment could be required with respect to the new stock received thereon; *378 and all of such stock was properly allocated to principal. (See Matter of Lissberger, 189 Misc. 277, affd. 273 App. Div. 881.)
The trustees originally received 103 shares of capital stock of Security Trust Company of Eochester. In 1941 the directors of Security Trust Company declared an 100% stock dividend and transferred earnings to capital. The trustees of the trust herein thereupon received an additional 103 shares of stock of Security Trust Company as the result of such dividend. They apportioned it hy allocating 26 shares thereof to principal and 77 shares to income, using the date of death of the testator as the basis for determining the intact value in the computation of the allocation.
Argument is made that a later date should be used to ascertain the intact value of said stock, to wit, February 15, 1922, when the account of the executors was approved and they were directed to pay over to the trustees the residue of the estate assets in their hands. Based upon the later date, it appears that a proper apportionment would require the allocation to principal of 5 more shares of said stock. Through subsequent stock splits said 5 shares now amount to 80 shares. Since in 1941 said 5 shares were allocated to income and were paid to the income beneficiaries, a decision changing the date for determining the intact value would result in a surcharge of the trustees followed presumably by action on their part to recover the equivalent of 80 shares of the present day stock.
Both sides in this issue rely upon Matter of Bird (241 N. Y. 184). Although the opinion in the Bird case discussed the principles involved in the fixation of a date subsequent to the testator’s death for determining, for purposes of apportionment, the intact value of stock held in trust, and cited cases in which later dates were fixed, the case held that generally the date of the testator’s death is the time as of which intact value of stock must he determined. The court said (pp. 187-188): “Where a sum is left in trust with the direction that the income be paid to A, then A is entitled to income from the death of the testator. [Citations] The trust certainly is created from the date when the cestui becomes entitled to his benefits.”
And the court continued (p. 189): “ We fail to find in this will any indication such as existed in the Ladd and Heye cases [Macy v. Ladd, 227 N. Y. 670; United States Trust Co. v. Heye, 224 N. Y. 242] of an intention to postpone the creation of the trust to some future date. On the other hand, the clear intent was that the beneficiaries should receive the income from the testator’s death. Therefore, the trust was created as of that *379 time and the apportionment should be made as of the same day.”
Clearly, under this testator’s will the beneficiaries were entitled to income from the date of the testator’s death (see Scott on Trusts, §§ 234.2, 234.3, and cases cited in n. 2 p. 1282); and hence under the Bird decision the trustees properly apportioned the 1941 stock dividend based upon intact value as of the date of the testator’s death.
In 1943 the Security Trust Company of Rochester split its stock, issuing 8 new shares for each old share, and in 1945 made a further split of 2 new shares for each existing share. The remaining question herein is whether there must be an apportionment of the stock received by the trustees as a result of these two stock splits. On each occasion the split was authorized by vote of the stockholders,. and at the same times earnings were transferred to capital to establish the proper capital assets in support of the new capital stock. The trustees herein allocated to principal all of the stock received on these splits, and have been paying income thereon to the income beneficiaries without objection until this time. The principles of law involved are the same as in Matter of Strong (198 Misc. 7, affd. 277 App. Div. 1157, supra), except that the case is one step nearer to the point where a holding for apportionment would be required. In the Strong case the transfers of income to capital were made when no new stock was issued, and later the stock was split. The case at bar is like that of Soles v. Granger (174 F. 2d 407), also discussed in the Strong case (supra). In the Soles case it was held that apportionment was required.
The special guardians contend that the objectant, Anne H. Lindsay, is estopped from objecting to the acts of the trustees in allocating to principal all of the stock received on the stock splits of 1943 and 1945 because she derives her interest in this estate solely by virtue of the exercise of the power to appoint the income granted by the testator to his son, Alexander M. Lindsay, Jr., her husband, who by will appointed one half of the income to her. The argument is that since Alexander M. Lindsay, Jr. was one of the trustees who allocated all of such stock to principal, he himself could not have objected, and hence his appointee may not be heard to object.
If her husband had not been a life beneficiary, the court would have some difficulty in accepting this argument, because as beneficiary under the power of appointment objectant derives her interest from the testator’s will, and not that of her husband. Nevertheless, if it should now be held that said stock *380 should have been apportioned, the stock allocated to income would have to be paid to those entitled thereto at the times it was received by the trustees. Alexander M. Lindsay, Jr. having been an income beneficiary at those times, his estate would be entitled to such income. Objectant, as life beneficiary of the residue of the estate of Alexander M. Lindsay, Jr., would thus benefit from such apportionment, because under her husband’s will she is granted the right to the possession of the residue of his estate without bond and without liability to account to anyone, the will providing that such part thereof as remains at her death should go to the two children. Thus, it appears that objectant will receive more income under the testator’s will if the acts of the trustees in allocating all of the stock to principal are approved; and that it is only as beneficiary under her husband’s will that she will gain in the event of apportionment. Since, therefore, her status as objectant in this issue is derived through her husband’s will, the contention of the special guardians that she can have no greater rights than her husband and is bound by his acts must be and is sustained.
Estoppel comes into play in another respect herein. The stock was allocated to principal in 1943 and 1945. It appears that all parties immediately interested in it knew thereof and acquiesced in such decision of the trustees. For years since then the interest has been paid in accordance with such allocation, and income taxes and estate taxes have been paid by many persons and estates in reliance thereon. Some estates have been fully administered in reliance thereon, and the objectant was a party to at least one such estate. Although the courts are slow to invoke the doctrine of estoppel in favor of a trustee as against a cestui que trust prior to a decree upon an accounting, in a proper case it will be applied. (See Matter of Union Trust Co. [Hoffman], 219 N. Y. 514; Matter of Security Trust Co. of Rochester, 189 Misc. 748, 767.) It seems appropriate to invoke the doctrine here.
Apart from the technical grounds stated above the court reaches the same result upon a consideration of the issue on its merits. Since the statute of 1926, section 17-a of the Personal Property Law, which provides that in the absence of contrary provision in the instrument creating the trust all stock dividends upon trust principal shall be allocated to principal, has been held not retroactive (City Bank Farmers Trust Co. v. Wylie, 273 N. Y. 304, 310; Matter of Hagen, 262 N. Y. 301, 305), the law in existence prior thereto must be deemed *381 to be still in force in respect of wills of testators who died prior to 1926.
Although objectant relies strongly upon the Osborne decision (Matter of Osborne, 209 N. Y. 450), that ease held only that where apportionment is called for it must be done in such manner as to preserve the corpus. So far as this court knows, no New York case has gone as far as Soles v. Granger (174 F. 2d. 407, supra); and since that case arose, the State of Pennsylvania has changed the law under which it was decided. This court has no right to disregard established precedents of our highest court. Nevertheless, when changing times and events indicate a change in public policy and in the attitude of the higher courts, lower and intermediate courts have sometimes deemed it proper to recognize the change, though not in complete harmony with old precedents. (See Gadella v. Chandler, 172 F. 2d 402, 409; Spector Motor Service v. Walsh, 139 F. 2d 809, 814, 823; and, see, Matter of Strong, 198 Misc. 7, affd. 277 App. Div. 1157, supra). Nonetheless, this court would not feel at liberty to decline to follow an exact New York precedent on the question of stock apportionment herein. However, for the reasons discussed at length in Matter of Strong (supra) and in view of changed policies and attitudes of our Legislature and courts, it seems to be entirely consistent with this court’s responsibilities to decline to extend the so-called doctrine of Matter of Osborne (209 N. Y. 450, supra).
So far as the law of New York has been stated by our courts, concerning stock dividends and stock splits in trusts under wills of testators dying prior to 1926, it appears that the bona fide intentions and acts of the directors of the corporation involved have been honored and upheld (Bourne v. Bourne, 240 N. Y. 172, 177; Matter of Lissberger, 189 Misc. 277, affd. 273 App. Div. 881, motion for leave to appeal denied 298 N. Y. 934, supra; Matter of Strong, supra, p. 18). The evidence in this case shows that for bona fide business reasons the directors of the Security Trust Company of Rochester made no declaration of stock dividends in 1943 and 1945, but instead, upon the votes of the stockholders of the corporation, the stock was split. Since that stock split the company has declared stock dividends, and hence as in the Strong case, it appears that its directors have been conscious of the manner of declaring a true stock dividend. Again, as in the Strong case, the Security Trust Company has paid good cash dividends throughout the period. Earnings of a corporation are not income to the stockholders until declared as dividends by the directors. A court may not lightly assume the functions of the directors of a corporation *382 and transform corporate earnings into income when the directors have not seen fit to declare them to be such. In view of the express intentions and acts of the corporation in 1943 and 1945, and it appearing that the same were in good faith, it is held that no stock dividend resulted therefrom; and the acts of the trustees in allocating to principal all of the stock received on said two stock splits is approved.
Submit decree accordingly.