Birdie Amsterdam, J.
This is á proceeding under article 79 of the Civil Practice Act brought by the petitioner, Bankers Trust Company, as trustee of an inter vivos trust, for a judicial settlement of its intermediate account of its trusteeship from the inception of said trust on November 20,1936, up to and including January 20, 1960.
The problem presented herein relates to the allocation of stock distributions, as between principal and income, received from various corporations of which the trust has been a shareholder during the period covered by the account. The issues are whether or not these stock distributions are, wholly or in part, within the meaning of the trust indenture, “ dividends payable in the stock of the corporation authorizing or declaring them” and thereby distributable to the income beneficiary; whether stock splits of shares the par or stated value of which had been increased some time earlier are income or principal; and whether that part of a stock distribution which is supported by a transfer of capital surplus represents a distribution of earnings entitling the income beneficiary to any of the shares.
The trust involved herein was created on November 20, 1936 by an indenture between the settlor, Martha Locke Shoenhair, now known as Martha Milam, and the Bankers Trust Company, and Theodore K. Shoenhair, Jr., as trustees. Under its terms, as amended in 1951, she reserved the right to income for life as well as a limited power to invade principal. She provided that upon her death the trust is distributable to and among her children in such shares as she shall by will appoint:
Article fifth of the said trust provides in part as follows:
“ fifth: All cash dividends, whether ordinary or extraordinary; all dividends payable in the stock of the corporation authorizing or declaring them, and all dividends payable in the stock of a corporation other than the one authorizing or declaring them shall be treated by the Trustees as income.
‘ ‘ All dividends of every nature declared by corporations engaged in mining, the production of lumber, oil,- gas, sulphur, the sale of real estate, or other similar activities (commonly called 1 wasting asset corporations ’) or paid by a corporation holding stock of any such wasting asset corporation, or derived directly or indirectly from the operations of any such wasting asset corporation, shall be treated by the Trustees as income.
*887 ‘ ‘ All dividends declared but unpaid, and all interest which shall have accrued on securities at the- time of the delivery thereof to the Trustees, whether such delivery be made upon the execution of this agreement or at some future date, shall be treated by the Trustees as income. ” ■
Objections to the account have been filed by the settlor, as life beneficiary, through her assignee, the Bank of California National Association, and by the remaindermen.
The income beneficiary or the remaindermen or both have raised objections to the trustees’ determinations with respect to the treatment of stock distributions of 14 different corporations. These are: (1) The 1958 distribution of three shares of $5 par value of Addressograph Multigraph Corp. for each share of $10 par value held; (2) the 1956 distribution of one and one-half shares of $10 par value of American Electric Power Co. (formerly known as American Gas and Electric Co.) for each share of $5 par value held; (3) the 1950 distribution of two shares of $25 par value of American Viscose Corp. for each share of $14 par value held; the 1955 distribution of one additional share of $25 of par value for every four shares held; (4) the 1945 distribution of one additional share of $1 par value of Burlington Industries, Inc. (formerly known as Burlington Mills Corp.) for each share of $1 par value held; and the 1946 distribution of one additional share of $1 par value of said corporation for each share of $1 par value held; (5) the 1952 distribution of one share of $17 par value of Cincinnati'Gas & Electric Co. for each share of $8.50 par value held; the 1953 distribution of two shares of $8.50 par value for each outstanding share of $17 par common; (6) the 1951 distribution of one additional share of $5 par value of Continental Oil Co. for each share of $5 par válue held and the 1957 distribution of one additional share of $5 par value of said corporation for each share of $5 par value held; (7) the 1947 distribution of four shares of $15 par value of Dow Chemical Co. for each share of no par stock, having a stated value of $29.87, held; (8) the 1954 distribution of three shares of $5 par value of General Electric Co. for each share of no par stock, having a stated value of $6.25 held; (9) the "1955 distribution of one additional share of $10 par value of B. F. Goodrich Co. for each share of $10 par value held; (10) the 1947 distribution of two additional shares of no par stock having a stated value of $13.33 of Johns-Manville Corp. for each share of no par stock, having a stated value of $40, held; (11) the 1955 distribution of one additional share of $1.50 *888 par value of Minneapolis-Honeywell Regulator Co. for each share of $1.50 par.value held; (12) the 1954 distribution of one additional share of $25 par value of Standard Oil Co. of Indiana for each share of $25 par value held; (13) the 1951 distribution of two shares of $15 par value of Standard Oil Co. (New Jersey) for each share of $25 par value held, and the 1956 distribution of three shares of $7 par value of said corporation for each share of $15 par value held; and (14) the 1943 distribution of one share of Consolidated Natural Gras Co. for each Id shares of Standard Oil Co. (New Jersey) held.
The following table succinctly sets forth the issues between the respective parties. Column “A” relates to the trustees’ allocations; column “ B ” the allocations the income-beneficiary claims should have been made; column “ C ” the allocations the remaindermen claim should have been made.

ABC

Slock Trustee Income Beneficiary Remaindermen Principal Income Principal Income Principal Income

Addressograph Multigraph Corp. 600 0 400 200 No objection
American Electric Power Co. 714.42 185.58 300 600 900 0
American Viscose 1G0.41 239.59 112 288 400 0
Burlington Industries, Inc. 800 0 200 600 No objection
Cincinnati Gas& Electric Co. 1,000 0 500 500 No objection
Continental Oil Co. (1951 and 1957) 300 9 00 No objection 1,200 0
Dow Chemical Co. 877.38 592.62 867.39 602.61 1,470 0
General Electric Co. 375 525 No objection . 900 0
B. F. Goodrich Co. 600 0 300 300 No objection
Johns-Manville Corp. 300 0 150 150 No objection
Minneapolis-Honeywell Regulator Co. 800 • 0 400 400 No objection
Standard Oil Co. of Indiana 286.06 113.94 200 200 400 0
Standard .Oil Co. (New Jersey) 1,173.29 26.71 714.29 485.71 1,200 0
Consolidated Natural Gas Co. 20 0 0 20 No objection
The foregoing stock distributions are separated and grouped into three different categories.
In the group listed below, no previously uncapitalized earnings were capitalized simultaneously with the" issuance of new cer *889 tificates. The remaindermen agree with the trustee as to this allocation but the life beneficiary objects.

Total Shares Allocation Held by ■■ Allocation Demanded by Year Company Trustee by Trustee Mrs. Milam

Before After Split Split Principal Income Principal Income

1947 Johns-Manville Corp. 100 300 300 0 150 150
1945 Burlington Mills Corp. 200 400
Burlington 1946 Mills Corp. 400 800 800 0 200 600
1955 Minneapolis-Honeywell Regulator Co. 400 800 800 0 400 400
1955 B. F. Goodrich Co. 300 600 600 0 300 300
1953 Cincinnati Gas & Electric Co. 500 1,000 1,000 0 500 500
1958 AddressographMultigraph Corp. 200 600 600 0 400 200
In five of the remaining stock distributions, the trustee has tentatively allocated a number of shares to income but not as many as the life beneficiary claims should be allocated. The remaindermen object to the allocation to income of any of these shares.
The issuing company in each case transferred to capital stock account, simultaneously with the issuance of new and additional certificates, not only previously uncapitalized earnings, (earned surplus) but capital surplus in which there might or might not have been previously capitalized earnings.
The trustee has, in effect, determined that only the earnings previously uncapitalized and capitalized in conjunction with the new issue of certificates may be taken into consideration in determining whether there has been a dividend and, if so, its extent. The life beneficiary contends that transfers from capital surplus must also be taken into account in ascertaining the “ dividend ” involved. The remaindermen contend that no dividend whatsoever — within the meaning of the trust instrument — -has been effected in these instances.
*890 The distributions which involved the transfer to capital stock account of some earned, surplus and some capital surplus are grouped as follows:

Total Shares Tentative Allocation held by Allocation Demanded by Year Company Trustee by Trustee Mrs. Milam

Before After Split Split Principal Income Principal Income

1950 American Viscose Corp. 200 400 160.41 239.59 112 288
1956 American Gas & Elec. Co. (now American Electric Power Co.) 600 900 714.42 185.58 300 ' 600
1956 Standard Oil Co. (N. J.) 400 1,200 1,173.29 26.71 714.29 485.71
1952 Dow Chemical Co. 490 1,470 877.38 592.62 867.39 602.61
1954 Standard Oil Co. (Ind.) 200 400 286.06 113.94 200 200
Of the final three stock distributions, the trustee has tentatively allocated to income a number of shares satisfactory to the life beneficiary and she has not objected. The remainder-men, however, have objected claiming that none of the shares should be allocated to income. The following are the distributions in which only earned surplus was capitalized with the stock split distribution:

Year Company Total Shares held by Trustee Tentative Allocation by Trustee Allocation Sought by Remaindermen

Before Split After Split Principal Income Principal

1954 General Electric Co. 300 900 375 525 900 0
1951 Continental Oil Co. 300 600
1957 Continental Oil Co. 600 1,200 300 900 1,200 0
In addition, the income beneficiary objects to the allocation to principal of 20 shares of stock of Consolidated Natural Gas Company received as a dividend in respect of 200 shares 'of stock of Standard Oil Company (New Jersey). This stock was received in partial liquidation.
*891 All of the parties agree that the disposition of the shares depends upon the interpretation of the quoted clause of the trust instrument (Art. fimh).
The construction under the laws of the State of New York for instruments of trusts executed subsequent to 1926 is subject to section 17-a of the Personal Property Law which provides in part that any dividend that shall be payable in the stock of the corporation or association declaring or authorizing such dividend shall be principal and not income of such trust unless otherwise provided.
The statute clearly gives the settlor the right and privilege of providing for a distribution of stock dividends in any form as income and not as principal provided her intent to do so is clearly set forth in the trust instrument.
It appears from the language used by the settlor that she intended to render inapplicable the provisions of section 17-a of the Personal Property Law.
The trust instrument refers solely to stock dividends and is completely silent as to stock splits. Therefore, shares received on a stock split are principal while those received as a stock dividend are income. (Matter of Horrmann, 3 A D 2d 5 [1956]; Matter of Fosdick, 4 N Y 2d 646 [1958].) The income beneficiary and the trustee are agreed on this, but they are not in agreement as to the nature of the distinction between a stock dividend and a stock split.
The income beneficiary’s principal objections refer to the tentative allocation to trust principal of stock distributions to the extent they are based upon corporate capital surplus as distinguished from earned surplus.
The income beneficiary contends that under the language used in article fifth, she is entitled to all dividends on stock without any limitations and regardless of whether they represent current earnings, prior earned surplus, capital surplus, paid-in surplus or any combination or variant thereof.
The trustee, on the other hand, in the tentative allocation of stock dividends, has followed the rationale of the Court of Appeals opinion in Matter of Payne (7 N Y 2d 1 [1959]).which placed the capital-surplus limitation upon the rule of stock-dividend apportionment laid down in Matter of Osborne (209 N.Y. 450 [1913]).
Immediately prior to 1926 the rule in New York regarding corporate distributions was enunciated in 1913 in Matter of Osborne (supra). The following passage concerning the Osborne rule, taken from Matter of Payne (supra pp. 11-12) puts the rule in its proper light. “ In Matter of Osborne *892 * * ■ we adopted the fiction that the capitalization of accumulated earnings, when accompanied by the simultaneous issue of stock, is equivalent to the distribution of those earnings in the form of that stock. But even in Osborne, we recognized the inequitable results which might stem from this artificial practice if unchecked (209 H. Y., at p. 475). However, instead of questioning the validity of the basic assumption that the entire new issue of stock in such cases represented a distribution of earnings, we devised the ‘ intact value ’ principle as a sort of safety valve.”
The Osborne rule thus superimposed the “intact value” safety valve upon the then existing Hew York rule that all corporate distributions went undiminished to the income beneficiary.
The Osborne rule was purely an equitable concept aimed at giving the income beneficiary a share of corporate earnings whenever they could be said to have been distributed. It related to distributions in cash and in property as well as in stock of the issuing company, and had no occasion to define “ stock dividends ’ ’. Because they were pursuing an equitable goal, the courts ignored the corporate purpose and looked to the effect of a distribution of stock, and applied the Osborne rule to any distribution in which earnings were £ ‘ capitalized ’ ’ and in effect removed from the normal source of cash distributions.
With the enactment of section 17-a which modified the common law, and declared all stock dividends to be principal unless otherwise provided, the courts have sought to interpret the intention of the settlor and to restrict the claims of income beneficiaries. (Matter of Horrmann, 3 A D 2d 5, supra; Matter of Lissberger, 189 Misc. 277, affd. 273 App. Div. 881 [1948], motion for leave to appeal denied 298 N. Y. 934.)
Both the trustee and income beneficiary have cited Matter of Fosdick (4 N Y 2d 646, supra) in support of their respective positions. The income beneficiary quotes from pages 654-655: “Indeed [the Osborne rule] * * * assumed the existence of a stock dividend and held merely that, unless the trustor otherwise provided, that part of a stock dividend which represented earnings accumulated before the creation of the trust should be retained as part of the principal and that part representing earnings after the creation of the trust be awarded to income beneficiaries. * * * Thé problem here represented requires only a definition of the term stock dividends as used in the deed.”
The trustee refers to page 654 wherein the court states that 11 it has been held by some courts that unless earnings be capital *893 ized simultaneously with the issue of the new stock there is no stock dividend (Matter of Strong, [198 Misc. 7, affd. 277 App. Div. 1157]; Matter of Lindsay, 11 Misc 2d 374; cf. Matter of Berger [Bankers Trust Co.], [6 Misc 2d 468]) ”.
However, the court did not pass upon the correctness of these quoted decisions because in the case of the General Electric distribution, the only one before the court in the Fosdick case, the transfer of capital supporting the issuance was made simultaneously with the new issue.
Thus Matter of Fosdick was principally concerned with the state of the law as it existed at the time of the creation of the trust and is of rather limited authority because it involved the interpretation of a rather unusual clause in a particular trust instrument. The court did not pass upon the precise question of whether or not a stock dividend can be capitalized by a transfer from capital surplus and it was not until Matter of Payne (7 N Y 2d 1, supra) was decided that the term “ stock dividends ’’has been further clarified and defined as used in trust instruments.
There the court rejected the suggestion of the income beneficiary that he could demand all corporate distributions, whatever their nature and whatever their source and held that in point of fact, the nature of each distribution is important and its source of particular significance.
The court was concerned with the specific allocation of stock dividends received on stock of the Standard Oil Co. (Indiana), one of the stocks involved in the present accounting.
It consisted of the distribution in 1954 of one additional share of $25 par stock for each such share outstanding, and was capitalized partly from earned surplus and partly from capital surplus.
It appears from Appendix B to the Stipulation of Facts herein that the corporation transferred $405,746,409 to the capital stock account, of which $174,612,840 nominally came from capital surplus and of that sum $41,535,545 had just been transferred to capital surplus from earned surplus because there was not enough in capital surplus account to provide $174,612,840-for the capital stock account. Therefore, earned surplus really transferred $273,270,082 to the capital stock account in connection with the issue of the new shares, of which $231,734,537 was transferred directly, while $41,535,545 passed through the capital surplus account en route to the capital stock account. By the same token, the amount contributed by capital surplus to the capitalization was $174,612,840 less $41,535,545, or $133,079,295.
*894 The court, on the basis of somewhat slightly different figures in the reported decision held that distribution was capitalized 43.03% from capital surplus and 56.97% from earnings and directed the trustee to allocate the shares accordingly. •
The income beneficiary in this accounting claims that she is entitled to all 200 of the additional shares of stock of Standard Oil Oo. (Indiana), whereas the trustee is willing to allocate to her 134.40 shares and the balance of 65.60 shares distributed to the trustee herein, to principal.
Judge Fuld writing in Matter of Payne (supra, pp. 9-10) states: ‘ ‘ The distribution by the corporation of something which can be identified as capital may not be treated as a distribution of earnings, despite the fact that there have been earnings of equivalent or greater value accumulated during the life of the trust. * * * It makes clear the necessity for looking to the source of the ‘ dividend ’ and determining whether that which is being distributed was, in fact, earned by the company since the trust acquired the stock and still retains its status as earnings. Obviously, we cannot trace specific dollars of earnings or of capital as they are received and disbursed, but that does not justify our treating all corporate distributions as distributions of earnings. If the appellants were correct and an income beneficiary were to be held entitled to anything issued by the corporation in excess of the ‘ intact value ’, then, such a beneficiary would have to be given stock rights, identifiable capital assets whenever distributed and even shares issued in connection with what everyone would concede to be a stock split (in which no segregation of earnings or alteration of surplus accounts has taken place). None of these have we been willing to do.” On page 11: “ Accepting, as we do, the prevailing view that a transfer from capital surplus to the capital stock account does not constitute a capitalization or distribution of earnings when that transfer represents 100% of the-capitalization accompanying a stock distribution, it necessarily follows that we may not treat such a transfer as a capitalization of earnings simply because, as in the present case, it represents less than 100%.”
It appears from the content of this decision that, since a transfer from capital surplus to the capital stock account does not constitute a capitalization or distribution of earnings, any additional shares capitalized by..the transfer .are.not a stock dividend:, v -
All of . the cases on the subject hold-that .whether a. stock dividend made by a corporation during the term of the life estate is to be regarded as income or principal.is primarily a *895 question of the settlor’s intention as manifested in the instrument by which .the trust was created. ...
It is also generally agreed that a dividend .which, is not a distribution of earnings but of capital-assets of the corporation belongs to the remainderman and that any dividend derived from a mere enhancement of the value of the capital assets belongs to the remainderman. There is a clear distinction between stock .dividends and stock splits and in the absence of a direct and dispositive reference to stock splits in the instrument under review it cannot be held that article fifth encompasses a right to any shares received as a stock split. (See, also, Matter of Lissberger, 189 Misc. 277, supra.)
In reviewing the tentative allocations made by the trustee, it appears that it acted on the assumption that, to the extent that the additional shares had been charged against “ capital surplus ”, the distribution was a stock split rather than a stock dividend. On the basis of that assumption the trustee has transferred to corpus the prorata portion of the new shares charged by the corporation to its capital surplus.
The formula used by the trustee in allocating the stock is correct if it conforms to our holding that in each case of a stock distribution under the instrument under review, the trustee is required to determine whether the stock is charged for corporate purposes in part against capital surplus and in part against earned surplus or is partially a stock split and partially a stock dividend.
There is no longer any doubt that Matter of Osborne, which is conceded to be too favorable to income beneficiaries, has been repudiated by the Legislature of the State of New York as to trusts created after 1926 (Personal Property Law, § 17-a), and even in that case it was necessary to create a fiction that the capitalization of accumulated earnings, when accompanied by the simultaneous issue of stock was equivalent to the distribution of those earnings in the form of stock. This theory, which could lead to inequitable results, forced the court to devise the “ intact value ” principle.
Since the date of execution of the trust instrument herein (1936), corporate practices, financial policies and corporate distributions have changed. Stock splits, as commonly known today, were rare in 1936, and the approach to their understanding and treatment must be understood in the preparation of present day trust instruments. So also the answer as to whether a given stock distribution is a stock dividend and therefore income, or whether it is a stock split and therefore principal, depends upon *896 the means used by the corporation to capitalize its shares and the draftsman must be aware of the possible pitfalls in failing to recognize modern corporate practice,
While the' income beneficiary set forth, a broad statement of her intent to keep for herself any type of stock dividend, the term “ dividend ” relates to a distribution of profits or earnings to shareholders. A dividend which is not the result of a distribution of earnings is not a dividend nor are capital transfers which involve no distributions whatever.
The Settlor in article fifth used the words: “ all dividends payable in * • * * stock * * * shall be treated by the Trustees as income.”
She did not mention stock dividends as such. A dividend purports earnings. A construction of article fifth of the trust agreement establishes that it was her intent to reserve to herself stock dividends paid in lieu of current earnings. The donor is not entitled to stock splits or distribution capitalized out of the capital.
A review of the 14 disputed distributions establishes that the trustee has correctly interpreted in each case the proper allocation to be made of the stock distributions in accordance with the decisions of Matter of Payne (7 N Y 2d 1 [1959], supra); Matter of Posdick (4 N Y 2d 646 [1956], supra); Bourne v. Bourne (240 N. Y. 172 [1925]), and the objections of the income beneficiary and the remaindermen are hereby dismissed. (See, also, Matter of Matthews, 280 App. Div. 23, affd. 305 N. Y. 605 [1952].)
The following is a review of the 14 disputed distributions:
ADDBESSOGEAPH-MULTIGBAPH COEP.
In September, 1958, at which time the trustee held 200 shares of the $10 par common stock of Addressograph-Multigraph Corp., the corporation issued three shares of $5 par common stock in exchange for each share of $10 par common stock then outstanding.
At the same time, the corporation increased the size of its capital stock account by transferring thereto $4,703,760 from capital surplus, thus enlarging the capital stock account by 50%. After the additional capitalization was furnished by the capital surplus account, all 600 shares of Addressograph-Multigraph Corp. $5 par common stock received on said exchange have been tentatively allocated to principal by the trustee. This allocation is supported by Matter of Payne (supra). Any objections to the allocation are dismissed.
*897 American electric power company (formerly known as AMERICAN GAS & ELECTRIC COMPANY
The trustee purchased 300 shares of $10 par common stock of the American Gras & Electric Company (now known as American Electric Power Company) during 1949. In January, 1953, the corporation changed the par value of its common stock from $10 to $5 and issued two shares of $5 par common in exchange for each share of $10 par common outstanding. The trustee has allocated to principal all 600 shares of said $5 par common on hand after said distribution.
In May, 1956, the corporation changed the par value of its common stock from $5 back to $10 and in June 1956 issued one and one-half shares of $10 par common in exchange for each old $5 par share. The corporation transferred $90,550,020 to the capital stock account from an account designated 1 ‘ Capital Surplus — Premium on Common Stock Account,” and $40,-551,060 from earned capital surplus. This allocation is supported by Matter of Wren (21 Misc 2d 494, 496 [1959]) wherein the court held that an income beneficiary was entitled to 61.862% of the additional shares, as they were capitalized by transfers from earned surplus (citing Matter of Payne, supra).
Accordingly, the trustee has tentatively allocated 714.42 shares of $10 par common stock to principal and 185.58 to the income beneficiary, and any objections thereto are hereby dismissed.
AMERICAN VISCOSE CORP.
On August 2, 1948, the trustee purchased 200 shares of $14 par common stock of American Viscose Corp. for $13,465.40. In December, 1950, the corporation issued two shares of $25 par common stock in exchange for each share of its $14 par common stock outstanding.
At the same time the corporation transferred $12,441,618 from capital surplus and $61,589,178 from earned surplus to the common stock account. As a result of the foregoing, the trustee received 400 of the new $25 par common stock. Accordingly, the trustee has tentatively allocated 160.41 of the shares received in 1950 to principal and 239.59 of said shares to the income beneficiary. This allocation is supported by Matter of Fosdick (4 N Y 2d, 646, supra) and Matter of Payne (7 N. Y. 2d, 1, supra).
On February 2,1954, the trustee sold 300 shares of the $25 par common stock of American Viscose Corp. for $10,883.27 of which $4,364.19 (40.1%) has been tentatively allocated to prin *898 cipal and $6,519.08 (59.9%) has been tentatively allocated to income.
On November 23, 1955, the .trustee- still held 100 shares of said $25 par common stock.- On that date, the corporation declared a distribution of one additional share for each four shares outstanding. As a result the trustee received 25 additional shares, and as said shares were capitalized by a transfer from earned surplus, the trustee has allocated them to the income beneficiary.
Any objections to these allocations are hereby dismissed.
Burlington industries, inc. (formerly known as Burlington MILLS CORP.
In January, 1945, the trustee purchased 200 shares of the $1 par common stock of Burlington Mills Corp. for $9,244.96. In March, 1945, the said corporation distributed to the trustee another 200 shares of said stock which constituted a split of two for one. This distribution was capitalized by a transfer from capital surplus to the common stock account of $1 per share. The income beneficiary claims the entire 200 new shares as a “ stock dividend ” because the company transferred $1 per share from capital surplus to capital stock account.
In July, 1946, the company repeated the same process and the trustee received 400 new shares so that the trustee held a total of 800 shares of said stock.
On October 30, 1946, the trustee sold all of said 800 shares .for $14,663.19. The trustee has tentatively allocated all of said proceeds of sale to principal.
These allocations are supported on the authority of Matter of Payne (supra) and any objections thereto are dismissed.
CINCINNATI GAS & ELECTRIC COMPANY
In October, 1946, and in January, 1952, the trustee purchased a total of 500 shares of Cincinnati Gas & Electric Company. In April 1952, the corporation issued one share of $17 par common stock in exchange for each share of $8.50 par common then outstanding and transferred to the common stock account premiums on sales of common stock from 1948 to 1951 in the amount of $17,035,708, $134,540 of other capital surplus and $6,009,753 earned surplus.
In May, 1953, the. corporation reduced the par value of its .common stock to. $8.50 per share and issued two shares of .$8.50 par common stock in exchange for each outstanding share of $17 par common. As a result of said transaction, the trustee received 1,000 of $8.50 par common stock, all of which have *899 been tentatively allocated to principal. In People ex rel. Adams Elec. Light Co. v. Graves (272 N. Y. 77 [1936]), an analogous situation, the Court of Appeals held unanimously, since there had been no distribution of stock, just a transfer from surplus to the capital stock account, there had been no distribution of anything to the shareholder. Therefore, when the corporation issued shares of stock in exchange for outstanding shares, the distribution was a stock split rather than a stock dividend.
The increase in value of the common stock of Cincinnati Gas & Electric Company in 1952 is of no assistance to the income beneficiary and the fact that subsequently the corporation distributed a stock split does not convert the stock split into a stock dividend. Matter of Fosdick (supra) relied upon by the income beneficiary is no authority for her position, for the precise question was deliberately left open by the court in that case. (See, also, Matter of Lindsay, 11 Misc 2d 374 [1952]).
Accordingly, any objections to the allocations are dismissed.
CONTINENTAL OIL COMPANY
In April, 1943,. the trustee purchased a total of 300 shares. In June, 1951, the corporation issued one additional share of its capital stock for each such share outstanding. As the distribution was capitalized out of current earnings, the trustee has tentatively allocated to the income beneficiary the 300 shares received in 1951 while retaining as principal the original 300 shares purchased in 1943.
In 1957 Continental Oil Company again distributed to each of its shareholders, one additional share of its capital stock for each share outstanding. As a result, the trustee received 600 shares making 1,200 in all. As said additional shares were capitalized by a transfer of $48,861,155 from earned surplus to the capital stock account, and were held in Matter of Muller (15 Misc 2d 32 [1958]) to have been issued as a 100% stock dividend, the trustee allocated them to the income beneficiary, leaving 300 shares as principal. This allocation is analogous to the type of distribution discussed in the Matter of Fosdick (supra).
Accordingly, the objections of the remainderman are dismissed.
DOW' CHEMICAL COMPANY
In' May,- 1943, the trustee purchased 100 ■' shares of no par-common stock of Dow Chemical Company. In August, 1947, Dow Chemical changed from no par common to $15 par common and issued four $15 par common shares in exchange for each old no par common share. As a result, the trustee held 400 *900 shares of $15 par common. The stated value of the no par common stock was $29.87 per share. To capitalize the distribution, the corporation transferred $623,092.93 (1.66%) from capital surplus and $37,005,358.24 (98.34%) from earned surplus.
In accordance with Matter of Payne (supra,) and Matter of Fosdick (supra), of the 400 $15 par value shares received in 1947, 2987/6000th, i.e., 199.13 shares were capitalized by the old capital stock account and 3013/6000th, i.e., 200.87 shares by transfers from surplus. Of the latter, 3.33 shares were capitalized from capital surplus.
Accordingly, the trustee has tentatively allocated 202.46 of $15 par shares to principal and 197.54 of the shares to the income beneficiary.
Any objections with respect to these allocations to income are dismissed.
GENERAL ELECTRIC COMPANY
On May 6, 1943, the Trustee bought 300 shares of no par common stock of General Electric Company.
In April, 1954, the corporation issued three shares of $5 par common stock in exchange for each outstanding share of no par common. The stated value of the no par common was $6.25 per share. At the same time the corporation transferred $252,-401,864.40 from earned surplus to the common stock account. In Matter of Fosdick (supra) it was held that of the new shares, 5/12ths are attributable to a stock split and the balance to a stock dividend. Accordingly, the trustee has allocated 375 shares to principal and 525 shares to the income beneficiary.
Any objections to the allocations are dismissed.
B. E. GOODRICH: COMPANY
In August, 1951, the trustee purchased 300 shares of the no par common stock of B. F. Goodrich Company.
In 1954 the company changed from no par common stock to $10 par common, issuing one new $10 par common share in exchange for each outstanding no par share. At the same time the company transferred $66,315,061, representing the excess of the stated value of the old no par common over the par value of $10 par common, from the common stock account to capital surplus account.
In 1954 the company transferred $44,048,580 back from capital surplus to the common stock account, in order to capitalize a distribution in January, 1955, of one additional share for each share outstanding. The income beneficiary claims that the sum of $57,798,000 transferred from earned surplus to capital stock to cure impairment of capital resulting by writing off an item *901 of good will was really transferred in order to free capital surplus for the stock split a year later and assumes that the $44,048,580 transferred a year later from capital surplus to capitalize the additional shares was all originally part of the $57,798,000 transferred, although at the time 29.02% of the capital surplus amount admittedly consisted of $23,633,066 of paid in surplus.
The petitioner in its brief has analyzed and fully set forth the factual background of the various intra-corporate transfers from 1952 through 1955 involved in the disposition of the stock distribution and the court adopts these facts and accordingly, holds that the trustee has properly tentatively allocated to principal the 300 additional shares of $10 par common stock of B. F. Goodrich Company received by it on January 5, 1955. Any objections to the allocations are hereby dismissed.
JOHUS-MASVILLE COBPOBATIOU
On May 6, 1943, the trustee purchased 100 shares of the no par common stock of Johns-Manville Corporation for $8,383.38. In 1944, the corporation increased the stated value of its common stock from $20 to $40 and transferred $14,379,898 from capital surplus and $2,620,102 from earned surplus to the common stock account.
In 1947 the corporation distributed two additional shares of common stock for each share outstanding and reduced the stated value of its common stock to $13.33 per share.
As a result of the foregoing, the trustee received an additional 200 shares, making 300 in all. The trustees sold all said 300 shares on January 27, 1956, for $24,814.51, and by analogy to Matter of Strong (198 Misc. 7, affd. 277 App. Div. 1157) and Matter of Lindsay (11 Misc 2d 374, supra) has tentatively allocated to principal the proceeds of sale of all 300 shares. The increase in the stated value of the stock in 1944 did not constitute any distribution to the trust and did not constitute a, stock dividend, it merely being an intra-corporate transfer with the object of increasing the formal capital of the company. The distribution in 1947 involved no capitalization of earnings or any other capitalization. (Matter of Strong, supra.)
A.ny objections to the allocation by the trustee are hereby dismissed.
MIHÜEAPOLIS-KOI¡rETWELL BBGUTATOB CO.
In January, 1945, the trustee purchased 200 shares of $3 par common stock of Minneápolis-Honeywell Regulator Co. for $8,984.85.
*902 In May, 1950, the corporation reduced the par value of its common stock to $1.50 and distributed to its stockholders two shares of $1.50 par common in exchange for each share of $3 par common held. The trustee has allocated to .principal; all 400 shares of the $1.50 par common so received in 1950.
In May, 1955, Minneapolis-IIoneywell Regulator Co. distributed an additional share of $1.50 par common stock for each such share outstanding and transferred $4,762,055 from capital surplus to the common stock account to capitalize this distribution. The trustee received an additional 400 shares of said stock making 800 shares in all. After the said additional shares were capitalized by a transfer from capital surplus, the trustee has tentatively allocated them to principal. This allocation is supported by Matter of Payne (7 N. Y. 2d 1, supra) and any objections thereto are hereby dismissed.
standard oil company (indiana)
During 1945 the trustee purchased 200 shares of stock.
In January, 1954, the company transferred $405,746,402.38 of $25 per share to its capital stock account and distributed one additional share for each share outstanding.- Of the aforesaid sum of $405,746,402.38, 43.03% was transferred from capital surplus and the balance of 56.97% from earned surplus. Following the decision of Matter of Payne (supra) the trustee has tentatively allocated to principal 86.06 of the additional shares received in 1954 and 113.94 shares to the income beneficiary.
In its brief, the trustee acknowledges that it made an error in its statement of the transfers and that the earned surplus really transferred to the capital stock account was $273,270,082 of which amount $231,734,537 was transferred directly while $41,535,545 passed through the capital surplus account en route to the capital stock account. By the same token the amount contributed by capital surplus to the capitalization was $133,-079,295. The trustee therefore agrees that only 32.7986% of the . additional shares were in fact capitalized by transfers from capital surplus.
Accordingly, the trustee acknowledges that the income beneficiary should have been allotted 134.40 shares instead of only 113.94 and. the trustee will provide for this distribution in the amended account.
standard oil company (new jersey)
On April 30, 1943, the trustee bought 200 shares of $25 par capital stock of Standard Oil Company (New Jersey).
*903 In 1948 the corporation paid two 2%% stock dividends. In 1949 it paid a 2% stock dividend. As the shares received on these distributions were capitalized out. of current earnings, - the trustee has distributed them to the income beneficiary.- (See Matter of Matthews, 280 App. Div. 23, supra; Matter of Payne, supra.)
In 1951 the corporation distributed two shares of $15 par capital stock in exchange for each Outstanding share of $25 par capital stock. In Matter of Horrmann (3 A D 2d 5, supra) the court held that 5/6ths of the $15 par shares were distributed as a stock split and the balance as a stock dividend. However, since of the additional capitalization required on the issue of the $15 par shares, $149,539,527 or 98.75% was obtained by a transfer from capital surplus to the capital stock account, and only $1,888,203, or 1.25% was transferred from the earned surplus account, the trustee has tentatively allocated 399.17 shares to principal and 83/100ths of a share to income.
In March, 1956, the corporation reduced the par value of its capital stock from $15 to $7 per share, and issued three shares of $7 par capital stock in exchange for each outstanding share of $15 par stock. At the same time it transferred $364,828,659 from capital surplus and $27,784,185 of earned surplus to the capital stock account. As a result of -such distribution, the trustee held 1,200 shares of $7 par capital stock. Since of the additional capitalization required on the issue of the $7 par shares, $364,828,659 was obtained by a transfer from capital surplus to the capital stock account and $27,784,185 was transferred from the earned surplus account, the trustee allocated 1,173.29 shares of $7 par stock to principal and 24.22 to income. In addition thereto income also received 1 66/100ths shares on the 83/100ths of the share tentatively allocated to income as shown above, thus giving income a total of 26.71 shares.
These allocations are supported on the authority of Matter of Payne (supra) and any objections thereto are dismissed.
CONSOLIDATED NATURAL GAS COMPANY
On December 15,1943, the trustees received 20 shares of stock of Consolidated Natural Gas Company as their share of a distribution by Standard Oil Company (New Jersey) of such stock to its stockholders. The income beneficiary claims that she is entitled to the proceeds of sale of said 20 shares and to the proceeds of sale of 20 rights received thereon. The background of the distribution develops that during 1942, the Securities and Exchange Commission ruled that Standard Oil Company (New *904 Jersey) was a holding company under the Public Utility Holding Company Act of 1935 by virtue of its ownership of subsidiaries engaged in the production, distribution and marketing of natural gas.
Accordingly, Standard Oil Company (New Jersey) was ordered to divest itself of its natural gas subsidiaries. Hence, in 1942, Standard Oil Company (New Jersey) formed Consolidated Natural Gas Company and transferred the stock of all its subsidiaries to the Consolidated Natural Gas Company in exchange for all of the stock of said corporation and distributed said stock to its own stockholders at the rate of one share of Consolidated Natural Gas Company for each 10 shares of Standard Oil Company (New Jersey) held. At the same time Standard Oil Company (New Jersey) charged off $48,-032,734, the cost of its investment in said subsidiaries, against capital surplus.
Article fifth provides that ‘ ‘ All dividends of every nature declared by corporations engaged in * * * the production of * * * oil, gas * * * or similar activities * * * or paid by a corporation holding stock of any such wasting asset corporation * * * shall be treated by the Trustees as income.”
The trustee has taken the position that the key word in the trust instrument is “ dividends ” and that the subject distribution was in partial liquidation of Standard Oil Company (New Jersey), citing Matter of Matthews (280 App. Div. 23, supra, affd. 305 N. Y. 605) where it was so held.
The court holds that the trustee’s position is warranted, that the distribution of the Consolidated Natural Gas stock was therefore a rearrangement of capital structure. It follows that the 20 shares of Consolidated Natural Gas stock and the 20 rights issued thereon are properly principal. Any objections thereto are hereby dismissed.